# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| KELSEA D. WIGGINS; CRISTIAN A. PORTILLO II; and JONATHAN MULL, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; and BANK OF AMERICA CORPORATION,<br><br>    Defendants. | CASE NO. _____<br><br>CLASS ACTION<br><br>(JURY TRIAL DEMANDED) |

## CLASS ACTION COMPLAINT

Plaintiffs Kelsea D. Wiggins, Cristian A. Portillo II, and Jonathan Mull, individually and on behalf of all others similarly situated, complain and allege as follows based on personal knowledge as to themselves, on the investigation of their counsel, and on information and belief as to all other matters:

### NATURE OF ACTION

1. Plaintiffs bring this Class Action Complaint against Bank of America, N.A. and Bank of America Corporation (collectively, "Bank of America" or "Defendant") for legal and equitable remedies resulting from Bank of America's practices of systematically assessing $35.00 fees to its customers for overdrafts triggered by microtransactions of $1.00 or less (and often times as little as a single cent).

2. At all times relevant to this action, Bank of America's relationship with Plaintiffs and each of its other personal deposit account holders has been governed by a standardized set of contractual documents comprised of the "Deposit Agreement and Disclosures" and the incorporated "Personal Schedule of Fees" – the terms of which are drafted by Bank of America, amended by Bank of America from time to time at its convenience and complete and sole

discretion, and uniformly imposed by Bank of America on all of its customers. *See* Compl., Exhibit A (Deposit Agreement and Disclosures dated November 10, 2017 (hereinafter, the "Deposit Agreement")), at 2 ("You understand that these terms, as we may change or supplement them periodically, are a binding contract between you and us for your deposit account and your deposit relationship."); *see id.*, Exhibit B (Personal Schedule of Fees dated August 12, 2016 (hereinafter, the "Schedule of Fees")), at 1 ("Your account and deposit relationship with us are governed by this schedule of fees and the Deposit Agreement and Disclosures. . . . These agreements are part of the binding contract between you and us for your account and deposit relationship.").

3. For at least the past fifteen (15) years, up until November 2, 2018, Bank of America routinely assessed $35.00 fees to its customers for overdrafts triggered by microtransactions of $1.00 or less. In so doing, Bank of America breached the covenant of good faith and fair dealing, unlawfully converted its customers' funds, engaged in unconscionable practices, and unjustly enriched itself.

4. For people living paycheck to paycheck, like Plaintiffs and many other members of the Class (defined below), the improper overdraft fees at issue in this case not only damaged them monetarily but also had a serious effect on their everyday lives.

5. On behalf of themselves and the Class, Plaintiffs bring this action to recover all of the overdraft fees assessed by Bank of America as a result of microtransactions of $1.00 or less, as well as for other legal and equitable remedies.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because there are more than 100 class members, the aggregate amount in controversy for each claim alleged herein exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one member of the proposed Class is a citizen of a state different from Bank of America

7. Personal jurisdiction and venue are proper in Ohio and within this District because Plaintiff Wiggins is a resident and citizen of Ohio and maintains a personal deposit account with Bank of America at a Bank of America financial institution that is located in Ohio and within this District; because Plaintiff Wiggins's claims alleged herein arose in substantial part in Ohio and in this district; and because Bank of America does substantial business in Ohio and throughout this District.

## PARTIES

8. Plaintiff Wiggins is a resident and citizen of Columbus, Ohio. At all times mentioned herein, Plaintiff Wiggins has maintained a personal checking account with Bank of America.

9. Plaintiff Portillo is a resident and citizen of Texas. At all times mentioned herein, Plaintiff Portillo has maintained a personal checking account with Bank of America.

10. Plaintiff Mull is a resident and citizen of Washington. At all times mentioned herein, Plaintiff Mull has maintained a personal checking account with Bank of America.

11. Bank of America is a Delaware corporation that maintains its headquarters and principal place of business in Charlotte, North Carolina. Bank of America provides, inter alia, retail banking products and services to its consumers, including personal checking accounts and debit cards. Bank of America operates banking centers throughout Ohio and the United States.

## BACKGROUND

12. Fee-based overdraft fee policies cost American consumers at least $23.7 billion each year in the aggregate — more than the loans extended in exchange for such fees, which amount to approximately $21.3 billion annually.[1] Debit card transactions, the most common triggers of overdraft fees, cause an average overdraft of approximately $17.00 yet trigger an

---

[1] Leslie Parrish, *Overdraft Explosion: Bank fees for overdrafts increase 35% in two years*, Center for Responsible Lending, Oct. 6, 2009, *available at* http://www.responsiblelending.org/overdraftloans/research-analysis/crl-overdraft-explosion.pdf.

average fee of approximately $35.00.[2] Most consumers do not learn of an overdraft for two or more days, exposing them to heightened risks of additional overdraft fees in the interim.[3]

13. The overwhelming majority of overdraft fees are paid by chronic overdrafters, who are typically those least able to afford such fees or recover from them once incurred. According to research by the Consumer Financial Protection Bureau, less than one-fifth of account holders — those who incur three or more overdraft fees each year, totaling over $100 — pay more than 90 percent of all overdraft fees triggered by debit cards, checks, and ACH electronic transactions.[4] These "heavy overdrafters" generally have a household income below the U.S. average and pay nearly a full week's worth of their household income on overdraft fees each year.[5]

14. Seniors, young adults, military families, and the unemployed are hit particularly hard.[6] Americans aged 55 and older pay over $6.2 billion in overdraft fees annually[7] — $2.5

---

[2] Eric Halperin, Lisa James, and Peter Smith, *Debit Card Danger: Banks offer little warning and few choices as customers pay a high price for debit card overdrafts*, Center for Responsible Lending, at 25, Jan. 25, 2007, *available at* http://www.responsiblelending.org/overdraft-loans/research-analysis/Debit-Card-Danger-report.pdf.

[3] The Pew Charitable Trusts, *Overdrawn: Persistent Confusion and Concern About Bank Overdraft Practices*, June 2014, at 9-10, *available at* http://www.pewtrusts.org/~/media/assets/2014/06/26/safe_checking_overdraft_survey_report.pdf.

[4] Consumer Financial Protection Bureau, *Data Point: Checking Account Overdraft*, at 18, July 2014, *available at* http://files.consumerfinance.gov/f/201407_cfpb_report_data-point_overdrafts.pdf.

[5] The Pew Charitable Trusts, *Heavy Overdrafters: A Financial Profile*, at 1, Apr. 2016, *available at* http://www.pewtrusts.org/~/media/assets/2016/04/heavyoverdrafters.pdf.

[6] *See* FDIC Study of Bank Overdraft Programs (Nov. 2008), at v.; Leslie Parrish, *Consumers Want Informed Choice on Overdraft Fees and Banking Options, CRL Research Brief*, Apr. 16, 2008, *available at* http://www.responsiblelending.org/overdraft-loans/research-analysis/final-caravan-survey-4-16-08.pdf; *see also* Comments of the Center for Responsible Lending to Board of Governors of the Federal Reserve System on Proposed Rule to Amend Regulation E—Overdraft Practices, Part II.B.1(b), pp. 10-12, Mar. 30, 2009, *available at* http://www.responsiblelending.org/overdraft-loans/policylegislation/regulators/comments-regulation-e_overdraft-practices.pdf.

[7] Leslie Parrish and Peter Smith, *Shredded Security: Overdraft practices drain fees from older Americans*, Center for Responsible Lending, June 18, 2008, *available at* http://www.responsiblelending.org/overdraftloans/research-analysis/shredded-security.pdf.

billion for debit card/ATM transactions alone.[8] Those who depend the most on Social Security pay $1.4 billion in overdraft fees each year.[9]

15. As the financial toll of fee-based overdraft programs has increasingly and disproportionately fallen on the shoulders of our most vulnerable citizens, big banks have steadily become more and more reliant on overdraft fees as a revenue source. By way of illustration, big banks in the United States with assets exceeding $1 billion reported $11.16 billion in overdraft fee revenue in 2015 – a sum that constituted nearly two-thirds of all consumer deposit account revenue for those banks that year.

16. For Bank of America in particular, overdraft has evolved from an occasional courtesy into a product that it depends upon for revenue. In 2016, Bank of America generated more than $1.7 billion in revenue attributable to $35.00 overdraft fees, paid largely by its poorest customers. On average, each Bank of America checking account holder pays $497.18 on overdraft fees each year.[10]

17. Faced with heightened regulatory scrutiny in recent years, Bank of America has implemented various new strategies to feed its insatiable appetite for overdraft fee and other fee-based revenue.[11] This case concerns one such strategy, executed by Bank of America in clear breach of its legal obligations to accountholders during the time period(s) relevant to this action.

---

[8] *Id.*

[9] *Id.* At 6, Table 1.

[10] Byrne, John, *Bank Fees rise to all-time high – and nobody can stop them*, New York Post, Mar. 12, 2017, *available at* https://nypost.com/2017/03/12/bank-fees-rise-to-all-time-high-and-nobody-can-stop-them/.

[11] *See, e.g., Farrell v. Bank of America, N.A.*, Case No. 3:16-cv-00492-L-WVG (S.D. Cal.) ($66.6 million settlement for improper extended overdraft fees); *Bodnar v. Bank of America, N.A.*, Case No. 5:14-cv-3224-EGS (E.D. Pa.) ($27.5 million settlement for improper overdraft fees charged despite sufficient available funds); *Pantelyat v. Bank of America, N.A.,* Case No. 1:16-cv-8964-AJN (S.D.N.Y.) ($22 million settlement for improper overdraft fees charged on non-recurring Uber transactions).

## FACTUAL ALLEGATIONS

18. Over at least the past fifteen years, up until November 2, 2018, Bank of America regularly assessed $35.00 fees to its account holders for overdrafts caused by microtransactions of $1.00 or less, and often as little as a few cents.

19. The Deposit Agreement states as follows with respect to Bank of America's practices of assessing overdraft fees:

> We pay overdrafts at our discretion, which means we do not guarantee that we will always, or ever, authorize and pay them. If we overdraw your account to pay items on one or more occasions, we are not obligated to continue paying future insufficient funds items. We may pay all, some, or none of your overdrafts, without notice to you. If we do not authorize and pay an overdraft, then we decline or return the transaction unpaid.
>
> The *Schedule of Fees* for your account explains when we charge you fees for overdrafts and for declined or returned items and the dollar amount of the fees. Please review the Schedule of Fees for your account carefully.
>
> If we overdraw your account, you agree to repay us immediately, without notice or demand from us. We ordinarily use deposits you or others make to your account to pay overdrafts, fees and other amounts you owe us.

(Ex. A at 17.)

20. During the relevant time period, whenever there were insufficient available funds to cover a transaction – regardless of the dollar amount of the transaction that had overdrawn the account, or the amount by which the account became overdrawn – Bank of America exercised its discretion under the Deposit Agreement (which it vested upon itself) to charge an overdraft fee in the amount of $35.00. (*See* Ex. B at 13.)

21. Egregiously, up until November 2, 2018, Bank of America routinely charged $35.00 overdraft fees to its customers' accounts for overdrafts triggered by microtransactions of $1.00 or less, and in many cases microtransactions of a single cent or a few cents.

22. For example, on April 5, 2018, an electronic debit transaction from "GasBuddy" posted to Plaintiff Mull's checking account in the amount of $0.01. Also on April 5, 2018, an electronic deposit transaction from "GasBuddy" posted to Plaintiff Mull's checking account, also

in the amount of $0.01. Thus, the GasBuddy deposit of $0.01 and the GasBuddy debit of $0.01 offset each other, and the balance of Plaintiff Mull's checking account remained unchanged as a result of both transactions. GasBuddy had initiated these electronic microtransactions to verify that Plaintiff Mull was the owner of the checking account. Later in the day on April 5, 2018, even though the $0.01 GasBuddy electronic debit transaction had been offset by the $0.01 GasBuddy electronic deposit transaction, Bank of America assessed a $35.00 overdraft fee to Plaintiff Mull's checking account as a result of the $0.01 electronic debit transaction from GasBuddy. By assessing an overdraft fee to Plaintiff Mull's checking account that was 3,500 times larger than the underlying transaction – a transaction which in any event had been simultaneously offset by an electronic deposit of the same amount, by the same merchant – Bank of America abused its discretion under the Deposit Agreement and Schedule of Fees.

23. As another example, on September 19, 2017, an electronic debit transaction from "Square Inc." posted to Plaintiff Portillo's checking account in the amount of $0.01. Also on September 19, 2017, an electronic deposit transaction from "Square Inc." posted to Plaintiff Portillo's checking account, also in the amount of $0.01. Thus, the Square Inc. deposit of $0.01 and the Square Inc. debit of $0.01 offset each other, and the balance of Plaintiff Portillo's checking account remained unchanged as a result of both transactions. Square Inc. had initiated these electronic microtransactions to verify that Plaintiff Portillo was the owner of the checking account. Later in the day on September 19, 2017, even though the $0.01 Square Inc. electronic debit transaction had been offset by the $0.01 Square Inc. electronic deposit transaction, Bank of America assessed a $35.00 overdraft fee to Plaintiff Portillo's checking account as a result of the $0.01 electronic debit transaction from Square Inc. By assessing an overdraft fee to Plaintiff Portillo's checking account that was 3,500 times larger than the underlying transaction – a transaction which in any event had been simultaneously offset by an electronic deposit of the same amount, by the same merchant – Bank of America abused its discretion under the Deposit Agreement and Schedule of Fees.

24. As a further example, on December 7, 2015, an electronic debit transaction from "ActiveHours Inc." posted to Plaintiff Wiggins's checking account in the amount of $0.04. Also on December 7, 2015, an electronic deposit transaction from "ActiveHours Inc." posted to Plaintiff Wiggins's checking account, also in the amount of $0.06. Thus, the ActiveHours Inc. deposit of $0.06 more than covered the ActiveHours Inc. debit of $0.04, and the balance of Wiggins's checking account reflected a net positive change of $0.02 as a result of both transactions. ActiveHours Inc. had initiated these electronic microtransactions to verify that Wiggins was the owner of the checking account. Later in the day on December 7, 2015, even though the $0.04 ActiveHours Inc. electronic debit transaction had been more than offset by the $0.06 ActiveHours Inc. electronic deposit transaction, Bank of America assessed a $35.00 overdraft fee to Wiggins's checking account as a result of the $0.04 electronic debit transaction from ActiveHours Inc. By assessing an overdraft fee to Wiggins's checking account that was 875 times larger than the underlying transaction – a transaction which in any event had been simultaneously covered by an electronic deposit of the same amount, by the same merchant – Bank of America abused its discretion under the Deposit Agreement and Schedule of Fees.

25. Tellingly, Bank of America recently released a revised version of the Deposit Agreement, effective on November 2, 2018, in which Bank of America now promises not to assess overdraft fees for overdrafts triggered by transactions of $1.00 or less. In so doing, Bank of America has itself acknowledged that its prior practice of assessing $35.00 overdraft fees for overdrafts triggered by microtransactions of $1.00 or less constituted an abuse of its discretion under the Deposit Agreement and was unconscionable and unfair to its customers. Having made this decision on its own accord, as evidenced by the revision it made to the Deposit Agreement on November 2, 2018, Plaintiffs Portillo, Wiggins, and Mull simply seek to have Bank of America do the right thing and repay the $35.00 overdraft fees it collected from them and its other accountholders as a result of overdrafts triggered by microtransactions of $1.00 or less prior to its enactment of the revised Deposit Agreement on November 2, 2018.

26. By assessing $35.00 overdraft fees as result of microtransactions of $1.00 or less prior to November 2, 2018, Bank of America breached the covenant of good faith and fair dealing, engaged in substantively and procedurally unconscionable practices, unlawfully converted funds belonging to its accountholders, and unjustly enriched itself, damaging Plaintiffs and the members of the Class (defined below) monetarily.

## CLASS ALLEGATIONS

27. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of themselves and all other similarly-situated individuals who were assessed overdraft fees as a result of microtransactions of $1.00 or less (the "Class"), defined as follows:

> All persons in the United States who, at any time prior to November 2, 2018 and during an applicable statutory period, held a personal checking account with Bank of America that was assessed (and was not refunded by Bank of America) an overdraft fee as a result of an electronic transaction of $1.00 or less.

28. Excluded from the Class are Bank of America, its parents, subsidiaries, affiliates, officers and directors, any entity in which Bank of America has a controlling interest, all customers who make a timely election to be excluded, governmental entities, counsel for the parties, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

29. Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

30. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23 with respect to the Class.

31. The Class is so numerous that joinder is impractical. On information and belief, the Class consists of millions of members, the identities of whom are within the knowledge of Bank of America and can be ascertained only by resort to Bank of America's records.

32. The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, were charged overdraft fees by Bank of America as a result of microtransactions of $1.00 or less. Plaintiffs, like all Class members, have

been damaged by Bank of America's misconduct in that they were assessed overdraft fees as a result of electronic transactions in amounts at least 35 times smaller than the size of the overdraft fees they triggered. Furthermore, the factual basis of Bank of America's misconduct is common to all Class members and represents a common thread of unlawful, unfair, and unconscionable conduct resulting in injury to all members of the Class.

33. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual Class members. Among the questions of law and fact common to members of the Class are:

(i) whether Bank of America imposed any overdraft fees prior to November 2, 2018 and during the applicable time period as a result of electronic debits of $1.00 or less (i.e., "microtransactions");

(ii) whether Bank of America abused any discretion to which it was entitled to exercise under the Deposit Agreement and Schedule of Fees in assessing overdraft fees to such microtransactions;

(iii) whether the assessment of overdraft fees to such microtransactions constituted breaches of the implied covenant of good faith and fair dealing;

(iv) whether Bank of America unlawfully converted its customers' funds in assessing overdraft fees to such microtransactions;

(v) whether the assessment of overdraft fees to such microtransactions was unconscionable;

(vi) whether Bank of America unjustly enriched itself in assessing overdraft fees to such microtransactions.

(vii) the proper method or methods by which to measure damages;

(viii) whether Class members are entitled to interest that have accrued on any improperly assessed fees and/or withheld interest; and

(ix) the declaratory relief to which Class members are entitled.

34. Plaintiffs' claims are typical of the claims of other Class members in that they arise out of the same overdraft policies governed by Bank of America's Deposit Agreement and other related documents in effect at all times relevant to this action, and arise out of the same conduct and practices of Bank of America in processing the same or similar types of microtransactions and imposing overdraft fees on such microtransactions during the applicable time period. Plaintiffs have no interests antagonistic to the interests of any other Class member.

35. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in prosecuting consumer class actions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

36. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the enormity of the financial resources of Bank of America, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, Class members would lose their rights by attrition.

37. Even if Class members could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved in this action, individualized litigation would significantly delay and cause expense to all parties and the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

## **CLAIMS FOR RELIEF**

### **FIRST CLAIM FOR RELIEF**
BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
(By All Plaintiffs Individually and On Behalf of the Class)

38. Plaintiffs repeat and incorporate herein all allegations from paragraphs 1-37 above.

39. Under the laws of the states where Bank of America does business, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law

or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

40. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

41. Since at least 2003, Bank of America has breached the covenant of good faith and fair dealing in the Deposit Agreement and Schedule of Fees through its overdraft policies and practices as alleged herein.

42. In particular, in assessing $35.00 fees for overdrafts triggered by microtransactions of $1.00 or less prior to November 2, 2018 and during the applicable statutory period(s), Bank of America abused whatever discretion it was entitled to exercise in charging overdraft fees pursuant to the Deposit Agreement and other related account documentation and otherwise failed to act in good faith pursuant to exercising its rights and obligations under the Deposit Agreement and other related account documentation.

43. Plaintiffs and the members of the Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement and Schedule of Fees.

44. Plaintiffs and members of the Class have sustained damages as a result of Bank of America's breach of the covenant of good faith and fair dealing.

**SECOND CLAIM FOR RELIEF**
UNCONSCIONABILITY
(By All Plaintiffs Individually and On Behalf of the Class)

45. Plaintiffs repeat and incorporate herein all allegations from paragraphs 1-37 above.

46. Bank of America's overdraft policies and practices are substantively and procedurally unconscionable in the following respects, among others:

    a. During the relevant time period prior to November 2, 2018, Bank of America did not disclose or reasonably disclose to customers the circumstances in which they would be assessed overdraft fees, including that they would be assessed overdraft fees for microtransaction debits of $1.00 or less that are offset by simultaneous microtransaction deposits of at least that same amount;

    b. During the relevant time period prior to November 2, 2018, the amount of overdraft fees was disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it was not contained in the Deposit Agreement, but rather in a different and separate document, the Fee Schedule, which was not signed by the depositor;

    c. During the relevant time period prior to November 2, 2018, the Deposit Agreement and Schedule of Fees provided to customers were ineffective, ambiguous, deceptive, unfair, and misleading in that they did not unambiguously state that the Bank would assess an overdraft fee to a microtransaction debit of less than $1.00 authorized into a negative balance, much less that such fees would be assessed to such transactions even where a microtransaction of the same amount is simultaneously deposited into the account to cover the amount of the microtransaction debit; and

    d. During the relevant time period prior to November 2, 2018, the Deposit Agreement and related documents, including the Schedule of Fees, were contracts of adhesion in that they were standardized forms, imposed and drafted by the Bank, which was a party of vastly superior bargaining strength, and only relegated to the customer the opportunity to adhere to them or reject the agreement in its entirety.

47. Considering the great business acumen and experience of Bank of America in relation to Plaintiffs and the members of the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the

purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

48. The imposition of overdraft fees which far exceed the amount overdrawn (e.g., the imposition of a $35.00 fee on an overdraft triggered by a transaction of $1.00 or less) was itself unconscionable. Such charges were not reasonably related to the Bank's cost of covering the overdraft and/or its risk of nonpayment (where the Bank paid the overdraft), or to the Bank's cost of returning the item unpaid (where the Bank did not pay the overdraft), particularly where the amount of such microtransaction debit was offset or exceeded by a simultaneous microtransaction deposit in at least the same amount as the debit.

49. Plaintiffs and members of the Class have sustained damages as a result of Bank of America's unconscionable policies and practices as alleged herein.

**THIRD CLAIM FOR RELIEF**
CONVERSION
(By All Plaintiffs Individually and On Behalf of the Class)

50. Plaintiffs repeat and incorporate herein all allegations from paragraphs 1-37 above.

51. During the relevant time period prior to November 2, 2018, Bank of America had and a duty to maintain and preserve its customers' deposit accounts and to prevent their diminishment through its own wrongful acts.

52. During the relevant time period prior to November 2, 2018, Bank of America wrongfully collected overdraft fees as a result of microtransactions of $1.00 or less from Plaintiffs and the members of the Class, and took specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them, in the manner alleged herein.

53. During the relevant time period prior to November 2, 2018, Bank of America, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the Class, without legal justification.

54. Bank of America continues to retain these funds unlawfully without the consent of Plaintiffs or the members of the Class.

55. Bank of America intends to permanently deprive Plaintiffs and the members of the Class of these funds.

56. These funds are properly owned by Plaintiffs and the members of the Class, not Bank of America, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the Class.

57. Plaintiffs and the members of the Class are entitled to the immediate possession of these funds.

58. Bank of America has wrongfully converted these specific and readily identifiable funds.

59. Bank of America's wrongful conduct is continuing.

60. As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the Class have suffered and continue to suffer damages.

61. By reason of the foregoing, Plaintiffs and the members of the Class are entitled to recover from Bank of America all damages and costs permitted by law, including all amounts that Bank of America has wrongfully converted.

**FOURTH CLAIM FOR RELIEF**
UNJUST ENRICHMENT
(By All Plaintiffs Individually and On Behalf of the Class)

62. Plaintiffs repeat and incorporate herein all allegations from paragraphs 1-37 above.

63. Plaintiffs, on behalf of themselves and the members of the Class, assert a common law claim for unjust enrichment.

64. By means of Bank of America's wrongful conduct alleged herein, during the relevant time period prior to November 2, 2018 Bank of America knowingly provided banking services to Plaintiffs and members of the Class that were unfair, unconscionable, and oppressive.

65. Bank of America knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class as a result of its assessment of overdraft fees for microtransactions of $1.00 or less during the relevant time period prior to November 2, 2018. In

so doing, Bank of America acted with conscious disregard for the rights of Plaintiffs and members of the Class.

66. As a result of Bank of America's wrongful conduct as alleged herein, Bank of America has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

67. Bank of America's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

68. Under the common law doctrine of unjust enrichment, it is inequitable for Bank of America to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees in an unfair, unconscionable, and oppressive manner as a result of microtransactions of $1.00 or less during the relevant time period prior to November 2, 2018. Bank of America's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

69. The financial benefits derived by Bank of America rightfully belong to Plaintiffs and members of the Class. Bank of America should be compelled to disgorge in common funds for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by them, including as a result of its assessment of overdraft fees for microtransactions of $1.00 or less. A constructive trust should be imposed upon all wrongful or inequitable sums received by Bank of America traceable to Plaintiffs and the members of the Class.

70. Bank of America unjustly assessed, collected, retained, and thus enriched itself by assessing $35.00 fees to Plaintiffs and the Class members as a result of overdrafts triggered by electronic microtransactions of $1.00 or less (and frequently of a mere cent) during the relevant time period prior to November 2, 2018, including on occasions where such debits were initiated by a third party for purposes of verifying the relevant deposit account as belonging to the correct individual (in order to link the account to the third party's service), in which case a microtransaction credit, typically of at least the same amount as the microtransaction debit that caused the overdraft, was simultaneously deposited into the account in question by the same third

party (meaning that no net negative change occurred to the account balance, but for the assessment of a $35.00 overdraft fee triggered by the microtransaction debit).

71. Plaintiffs and members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Kelsea D. Wiggins, Christian A. Portillo II, and Jonathan Mull, individually and on behalf of the proposed Class, demand a jury trial on all claims so triable and judgment as follows:

A. Declaring Bank of America's overdraft fee assessment practices described herein to be wrongful, unfair, and unconscionable, and in breach of the covenant of good faith and fair dealing;

B. Awarding restitution of all improperly-collected overdraft fees attributable to the wrongful conduct alleged herein;

C. Awarding actual damages in amounts according to proof;

D. Disgorgement of the ill-gotten gains derived by Bank of America from its misconduct alleged herein;

E. Awarding punitive and exemplary damages;

F. Awarding pre-judgment interest at the maximum rates permitted by applicable law;

G. Awarding costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

H. Awarding such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs, on behalf of themselves and the Class, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated: July 25, 2019            Respectfully submitted,

                                          **O'CONNOR, HASELEY, & WILHELM LLC**

                                          By: s/ John Haseley
                                             John Haseley

John Haseley
haseley@goconnorlaw.com
34 North Fourth Street, Suite 340
Columbus, Ohio 43215
Tel: (614) 426-8840

**HEDIN HALL LLP**
Frank S. Hedin*
fhedin@hedinhall.com
1395 Brickell Ave, Suite 900
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

**AHDOOT & WOLFSON, PC**
Robert Ahdoot*
rahdoot@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111
Fax: (310) 474-8585

\* *Pro Hac Vice* Application Forthcoming

*Counsel for Plaintiffs and the Putative Class*