UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KELSEA D. WIGGINS,** *et al.,*

        **Plaintiffs,**

    **v.**

**BANK OF AMERICA,
NORTH AMERICA,** *et. al.*

        **Defendants.**

**Case No. 2:19-cv-3223**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

The matters before the Court are Defendants' Bank of America, North America ("BANA") and Bank of America Corporation ("BAC") (collectively "Defendants") Motion to Dismiss and Strike Plaintiff's Complaint (ECF No. 11) and Motion for Oral Argument to Motion to Dismiss and Strike Plaintiff's Complaint (ECF No. 65). The motions are ripe for review. For the following reasons, the Motion to Dismiss and Strike the Plaintiff's Complaint (ECF No. 11) is **GRANTED in part and DENIED in part** and the Motion for Oral Argument to Motion to Dismiss and Strike (ECF No. 65) is **DENIED.**

### I.

Plaintiffs Kelsea D. Wiggins, Cristian A. Portillo II, and Jonathan Mull (collectively "Plaintiffs") filed this suit against Defendants on July 25, 2019. (*See* Compl., ECF No. 1.) As this matter is before the Court on Defendants' Motion to Dismiss, the allegations in the Complaint are taken as true and are as follows.

Plaintiff Wiggins is a resident of Ohio, Plaintiff Portillo is a resident of Texas, and Plaintiff Mull is a resident of Washington. (*Id.* ¶¶ 8–10.) Defendants are Delaware corporations which

maintain their principal places of business in North Carolina. (*Id.* ¶ 11.) Defendants provide retail

banking products and services including personal checking accounts and debit cards. (*Id.*)

Plaintiffs maintained personal checking accounts with Defendants. (*Id.*)

Defendants' "relationship with Plaintiffs . . . [is] governed by a standardized set of

contractual documents comprised of 'Deposit Agreement and Disclosures' and the incorporated

'Personal Schedule of Fees'" (the "Deposit Agreement.") (*Id.* ¶ 2.) With respect to overdraft fees,

the Deposit Agreement states in pertinent part:

> We pay overdrafts at our discretion, which means we do not guarantee that we will
> always, or ever, authorize and pay them. If we overdraw your account to pay items
> on one or more occasions, we are not obligated to continue paying future
> insufficient funds items. We may pay all, some or none of your overdrafts, without
> notice to you. If we do not authorize and pay an overdraft, then we decline or return
> the transaction unpaid.
>
> The *Schedule of Fees* for your account explains when we charge you fees for
> overdrafts and for declines or returned items and the dollar amount of the fees.
> Please review the *Schedule of Fees* for your account carefully.

(Compl. Ex. A at 17.) The Schedule of Fees sets the overdraft fee at $35.00. (*Id.* Ex. B at 14.)

Plaintiff Wiggins alleges that on December 7, 2015, an electronic transaction from

"ActiveHours Inc." was posted to her checking account in the amount of $0.04. (*Id.* ¶ 24.)

Additionally, an electronic deposit was posted to her checking account in the amount of $0.06.

(*Id.*) Defendants assessed a $35.00 overdraft fee to Plaintiff Wiggins's checking account. (*Id.*)

Similarly, Plaintiff Portillo alleges that on September 19, 2017, an electronic transaction from

"Square Inc." was posted to his checking account in the amount of $0.01 and an electronic deposit

transaction was posted to his checking account in the amount of $0.01. (*Id.* ¶ 23.) As a result,

Defendants assessed a $35.00 overdraft fee. (*Id.*) Finally, Plaintiff Mull alleges that on April 5,

2018, an electronic transaction from "Gasbuddy" was posted to his checking account in the amount

of $0.01 and an electronic deposit was posted to his checking account in the amount of $0.01. (*Id.*

¶ 22.) Defendants assessed a $35.00 overdraft fee to Plaintiff Mull's checking account as a result. (*Id.*) Plaintiffs allege that on November 2, 2018, Defendants modified the Deposit Agreement to eliminate overdrafts triggered by transactions of $1.00 or less. (*Id.* ¶ 25.)

Plaintiffs seek to bring this action on behalf of themselves and those similarly situated through Federal Rule of Civil Procedure 23. (*Id.* ¶ 27.) Plaintiffs bring four claims against Defendants: (1) breach of the covenant of good faith and fair dealing; (2) unconscionability; (3) conversion; and (4) unjust enrichment. (*Id.* ¶¶ 38–71.) Plaintiffs ask for a declaration that Defendants' overdraft fee assessment is wrongful, unfair, unconscionable, and a breach of the covenant of good faith and fair dealing, restitution, and damages. (*See id.* at 17.)

Defendants move to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(2) for a lack of personal jurisdiction and 12(b)(6) for a failure to state a claim upon which relief can be granted. Defendants have also asked for an oral argument.

## II.

Defendants have asked for an oral argument in support of their motion to dismiss. (ECF No. 65.) The Court finds that oral argument is not deemed essential to a fair resolution of the case and thus, **DENIES** the motion. *See* S.D. Ohio Civ. R. 7.1(a), (b)(2) ("[T]he determination of all motions . . . shall be based upon memoranda filed pursuant to S.D. Ohio Civ. R. 7.2 and without oral hearings," unless "oral argument is deemed to be essential to the fair resolution of the case.").

## III.

Rule 12(b)(2) provides for dismissal of an action where the district court lacks personal jurisdiction over the defendant. District courts have discretion to decide questions of personal jurisdiction using the pleadings, permitting discovery in aid of deciding the motion, or conducting an evidentiary hearing to resolve factual questions. *Res. Inst. at Nationwide Children's Hosp. v.*

*Trellis Boiscience, LLC*, No. 2:15-cv-3032, 2016 U.S. Dist. LEXIS 136309, at *8 (S.D. Ohio Sept. 30, 2016). Plaintiffs bear the burden of establishing personal jurisdiction. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988). When personal jurisdiction is decided "solely on written submissions, the plaintiff's burden is 'relatively slight.'" *Res. Inst.*, 2016 U.S. Dist. LEXIS 136309 at *8–9 (citing *id.*). The plaintiff must, "by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1455, 1458 (6th Cir. 1991). "The [C]ourt must view all of the pleadings and affidavits in a light most favorable to the plaintiff, and to defeat dismissal, the plaintiff need only make a *prima facie* case showing that personal jurisdiction exists." *Am. Greeting Corp.*, 839 F.2d at 1168; *see also Theunissen*, 935 F.2d at 1458 ("Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal."). The Sixth Circuit adopted this rule "in order to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen*, 935 F.2d at 1458.

In a diversity case, "[t]o determine whether personal jurisdiction exists over a defendant, Federal Courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment." *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996); *see also Theunissen*, 935 F.2d at 1459 ("A federal district court sitting in diversity must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a non-resident defendant."). There are two categories of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction. *See First Franchise Capital Corp. v. Jack in the Box Inc.*, No. 1:17-cv-397, 2017 U.S. Dist. LEXIS 120324, at *46 (S.D. Ohio Aug. 1, 2017) (citing *Daimler AG v. Bauman, U.S.*, 571 U.S. 117, 118 (2014)). "Ohio law does not recognize general

jurisdiction over a non-resident defendant." *JM-Nipponkoa Ins. Co. v. Dove Transp. LLC,* No. 1:14-cv-202, 2015 U.S. Dist. LEXIS 3081, at *7 (S.D. Ohio Jan. 12, 2015). Thus, Defendants must be amenable to suit through specific jurisdiction under Ohio's long-arm statute and the requirements of the Due Process Clause must be met. *See id.*

Ohio Revised Code § 2307.382 provides for when a court may exercise jurisdiction over a defendant and includes when the defendant "[t]ransact[s] any business in [Ohio]." *Id.* at § 2307.382(a)(1). Ohio courts interpret this section broadly. *First Franchise,* 2017 U.S. Dist. LEXIS 120324 at *27. In order to satisfy this section, the defendant must "do some act or consummate some transaction within the forum." *Imwalle v. Reliance Med. Prods.,* No. 1:17-cv-397, 2005 U.S. Dist. LEXIS 50526, at *8 (S.D. Ohio Sept. 19, 2005). If the defendant reaches out to the plaintiff in the forum state to create a business relationship, the defendant transacts business in the forum state. *Paglioni & Assocs. v. Winnercomm, Inc.,* No. 2:06-cv-276, 2007 U.S. Dist. LEXIS 18612, at *25 (S.D. Ohio Mar. 16, 2007).

The Court examines the Due Process Clause "recognizing that a defect of this type would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would otherwise permit it." *Theunissen,* 935 F.2d at 1459. "[T]he crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state such that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *CompuServe Inc.,* 89 F.3d at 1263 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Courts employ three criteria to make this determination:

(1) [T]he defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;

(2) [T]he cause of action must arise from the defendant's activities there; and

(3) [T]he acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*In-Flight Devices*, 466 F.2d at 2256.

Defendants argue that the Court lacks personal jurisdiction over: BAC with regards to all claims asserted against it, both Defendants with regards to all claims asserted by the two non-resident named plaintiffs, and both Defendants with regard to all claims brought by non-resident putative class plaintiffs. (*See* Defs.' Mot. Dismiss, ECF No. 11.) The Court will address these three contentions separately.

### 1. Personal Jurisdiction over BAC

Defendants argue that "Plaintiffs fail to establish personal jurisdiction over BAC because the Complaint contains no individual allegations about that entity or its alleged conduct." (Defs.' Mot. Dismiss at 5.) Defendants contend that Plaintiffs' Complaint unsuccessfully attempts to "collectivize" the two Defendants claims and in doing so fails to sufficiently allege facts against BAC for purposes of personal jurisdiction. (*Id.*; *see also* Defs.' Reply at 19–20, ECF No. 22.) Plaintiffs argue that they "have alleged facts plausibly suggesting that each of [] Defendants is liable for the conduct described in the Complaint, and [] merely 'collectivize[d]' [] Defendants for clarity, brevity, and concision." (Pls.' Resp. at 20 n.13, ECF No. 19.) Plaintiffs conclude that "because the [C]omplaint 'specifically alleges that each and every, one and all of [] [Defendants] did whatever is alleged [of them],' [the use of a defined term] for both BANA and BAC is proper." (*Id.* (citing *St. Denis J. Villere & Co. v. Caprock Commc'ns Corp.*, No. 3:00CV1613-N, 2003 WL 21339286, at *1 (N.D. Tex. June 4, 2003).)

The Complaint states "Plaintiffs bring this Class Action Complaint against Bank of America, N.A. and Bank of America Corporation (collectively, 'Bank of America' or

'Defendant')." (Compl. ¶ 1.) Next, the Complaint states that "Bank of America does substantial business in Ohio." (*Id.* ¶ 7.) Additionally, throughout the Complaint numerous actions relevant to personal jurisdiction in Ohio are attributed to "Bank of America" such as having a financial institution located in Ohio and operating banking centers throughout Ohio. (*Id.* ¶¶ 7, 11.) Thus, the Complaint contends that "Bank of America," which includes both Defendant BAC and BANA, transacts business in Ohio. As the Complaint is written, if such allegations create personal jurisdiction over Plaintiffs' claims against BANA then such allegations also create personal jurisdiction over BAC. Thus, failure to separate out the two Defendants is not a basis for concluding personal jurisdiction is lacking over one of such Defendants.[1] Defendants' motion to dismiss all claims against BAC on account of lack of personal jurisdiction is **DENIED.**

Defendants also ask for dismissal of these claims for failure to state a claim against BAC because Plaintiffs stated the claims against BANA and BAC together. (*See* Defs.' Mot. Dismiss at 6 ("Nor can Plaintiffs establish liability as to BAC based merely on its relationship to BANA.").) Plaintiffs have chosen to refer to both Defendants as one throughout the Complaint and therefore contending any action taken, or liability resulting therefrom, applies to both BAC and BANA. In this respect, "grouping of [] Defendants in the Complaint is a liberty that Plaintiffs can take and an inadequate reason to dismiss the claims." *Berry v. Cahoon*, 731 F. Supp. 2d 685, 686 (S.D. Ohio 2010). Plaintiffs' Complaint is clear that the allegations are against both BANA and BAC and thus, the grouping of the two Defendants is not reason to dismiss the claims against BANA at this time. *See Dardick v. Zimmerman*, 149 F. Supp. 2d 986, 989 (N.D. Ill. 2001) (denying the

---

[1] Defendants assume their argument succeeds and there is no personal jurisdiction over BAC due to the way the Complaint collectivizes the two Defendants. (*See* Defs.' Mot. Dismiss at 5–6.) Thus, they make their remaining arguments as to personal jurisdiction only with regard to BANA. (*See Id.*) Because the Court finds no error in collectivizing Defendants in the Complaint, the Court will address Defendants' remaining arguments as applicable to both BAC and BANA. *See infra* Section III.2.

defendant's motion to dismiss because plaintiffs "collectivized" the defendants and noting "[t]here is surely no mystery here as to what [the plaintiff] is claiming that defendants did . . . [and] [w]hether each defendant did or did not in fact engage [in such conduct] will emerge either in the course of the mandatory up-front disclosures now required by Rule 26(a) or through discovery or both."). The discovery process will reveal whether the allegations in the Complaint can be attributed to both Defendants, only BAN, or neither. *See id.* Defendants' motion to dismiss all claims against BAC for failure to state a claim is **DENIED**.

### 2. Personal Jurisdiction Regarding Plaintiffs Portillo and Mull's Claims

Defendants ask the Court to dismiss the non-Ohio resident named Plaintiffs' claims for lack of personal jurisdiction over Defendants with regard to these claims. (Defs.' Mot. Dismiss at 6.) Defendants contend that Plaintiff Wiggins's Ohio citizenship is not sufficient to establish personal jurisdiction over Defendants as to Plaintiffs Portillo and Mull's claims. (*See id.*) Defendants rely on the Supreme Court's decision in *Bristol-Myers Squibb Company v. Superior Court*, 137 S. Ct. 1773 (2017). (*Id.*) In response, Plaintiffs argue that: in a class action only a single named plaintiff needs to satisfy jurisdictional requirements, pendent personal jurisdiction applies, and jurisdiction will impose no additional burden on Defendants. (Pls.' Resp. at 17–19.)

In *Bristol-Myers* over 600 plaintiffs sued a pharmaceutical company in a California state court for injuries allegedly caused by a medication. *See* 137 S. Ct. at 1778. Eighty-six of the plaintiffs were from California and the remainder were from 33 other states and their claims had no connection to California. *Id.* The defendant was a resident of Delaware, New York, and New Jersey, and engaged in some business activities in California. *Id.* The California Supreme Court found no general personal jurisdiction over the defendant but found specific personal jurisdiction based on a "sliding scale" in that the defendant's extensive contacts with California permitted the

exercise of specific jurisdiction "based on a less direct connection between [the defendant's] forum activities and plaintiffs' claims than might otherwise be required." *Id.* at 1779. The California Supreme Court found the attenuation requirement met for the non-resident plaintiffs because their claims were similar in several ways to the claims of the California resident plaintiffs. *Id.*

The Supreme Court reversed and noted that for specific personal jurisdiction, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 1781 (citation omitted). The Supreme Court found the California Supreme Court's sliding scale approach irreconcilable with that settled principle. *See id.* The Supreme Court clarified that the fact that some California resident plaintiffs had been proscribed the drug, purchased the drug, or obtained and ingested the drug in California, did not allow the court to assert specific jurisdiction over the non-residents' claims who had no such connection to the state. *Id.*

Here, Defendants argue that Plaintiffs must show specific jurisdiction, as Defendants are not Ohio residents. (Defs.' Mot. Dismiss a 6.) Further, Defendants contend, *Bristol-Myers* compels the conclusion that there is no specific jurisdiction over Defendants for Plaintiffs Portillo and Mull's claims because the claims are not connected to Defendants' Ohio contacts. (*See id.*)

First, the Court agrees with Defendants that because Ohio does not recognize general personal jurisdiction, Plaintiffs must show specific personal jurisdiction. *See JM-Nipponkoa Ins.*, 2015 U.S. Dist. LEXIS 3081 at *7. Next, the Court agrees the Complaint contains no allegations with regard to Plaintiffs Portillo and Mull which connect their claims to Ohio. Plaintiffs do not dispute this point in their opposition. The Complaint does not allege Plaintiffs Portillo and Mull are Ohio residents, visited one of Defendants' banking centers in Ohio, engaged in any transaction

with Defendants related to or located in Ohio, or any other allegation that would satisfy the Ohio long-arm statute. Thus, Plaintiffs Portillo and Mull failed to make prima facie showing of specific jurisdiction under Ohio's long arm statute.

Further, even if Plaintiffs Portillo and Mull could show specific personal jurisdiction under Ohio's long-arm statute, the Court cannot exercise jurisdiction because it does not comport with due process. The Supreme Court in *Bristol-Myers* made clear that "[t]he mere fact that *other* plaintiffs . . . allegedly sustained the same injuries as did the nonresidents[]" does not provide specific jurisdiction over the nonresidents' claims. 137 S. Ct. at 1781. While Courts are somewhat split on whether *Bristol-Myers* applies to putative class members, courts generally agree that *Bristol-Myers* applies to named plaintiffs in class actions. *See Mussat v. IQVIA Inc.*, No. 17 C 8841, 2018 U.S. Dist. LEXIS 183549, at *11 (N.D. Ill. Oct. 26, 2018) ("*Bristol-Myers* applies here, at least in the sense that this is a class action in federal court, so there must be a named plaintiff allegedly injured inside the forum state."), *rev'd on other grounds*, 953 F.3d 441 (7th Cir. 2020) (holding that *Bristol-Myers* applies only to named plaintiffs); *Lee v. Nranch Banking & Trust Co.*, No. 18-21876-Civ-Scola, 2018 U.S. Dist. LEXIS 186340, at *4 & n.1 (S.D. Fla. Oct. 31, 2018) (finding both Florida's long arm statute and *Bristol-Myers* fatal to the nonresident named plaintiffs' claims in a class action); *Chernus v. Logitech, Inc.*, No. 17-672(FLW), 2018 U.S. Dist. LEEXIS 70784, at *6 (D.N.J. Apr. 27, 2018) (finding the court did not have personal jurisdiction over a nonresident named plaintiff in a putative nationwide class action where the named plaintiff's injury lacked a connection to the forum state); *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 874 (N.D Ill. 2017) (finding that because the named plaintiff was not an Illinois resident and the complaint did not allege any Illinois contact with his claims, *Bristol-Myers* required dismissal for lack of personal jurisdiction); *Spartley v. FCA US LLC*, 3:17-CV-62, 2017 U.S. Dist. LEXIS

147492, a \*19–20 (N.D.N.Y. Sept. 12, 2017) (applying *Bristol-Myers* and finding that the court lacked specific jurisdiction over the claims of the out of state named plaintiffs who showed no connection between their claims and the defendant's contacts with the forum state); *Roy v. FedEx Ground Package Sys.*, 353 F. Supp. 3d 43, 57 (D. Ma. 2018) (finding *Bristol-Myers* required dismissal of named nonresident plaintiff's claims). Thus, without more, the mere fact that Plaintiffs Portillo and Mull allegedly suffered the same injury as Plaintiff Wiggins, is not enough to sustain personal jurisdiction and comport with due process.

Plaintiffs make several arguments in opposition to this conclusion. First, Plaintiffs contend that "in a class action, only a single named plaintiff need satisfy each jurisdictional requirement." (Pls.' Resp. at 17.) For support Plaintiffs cite three cases, each holding that only one plaintiff must have *standing* in order for there to be a case or controversy. *See Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 264 n.9 (1977); *Horne v. Flores*, 557 U.S. 433, 446 (2009); *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 422 (6th Cir. 2012). These cases do not address the question currently before the Court, which is whether the Court must have personal jurisdiction over each Defendant for each claim asserted against them. As discussed above, while there is uncertainty as to whether the putative class members must show their claims give the Court personal jurisdiction over Defendants, it is clear that at a minimum the named Plaintiffs must show their claims provide the Court personal jurisdiction over Defendants. *See SunCoke, Inc. v. MAN Ferrostaal Aktiengesellschaft*, 563 F.3d 211, 219 (6th Cir. 2009) (a majority of the judges agreeing that personal jurisdiction must be proper as to each claim); *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 656 (N.D. Ohio 2019) ("Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different

claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause.").

Next, Plaintiffs argue that pendent jurisdiction applies and thus, because Plaintiff Portillo and Mull's claims arise out of the same common nucleus of operative fact as Plaintiff Wiggins's, the Court should exercise jurisdiction over all of the claims. (Pls.' Resp. at 18.) "Pendent personal jurisdiction is a common law doctrine that recognizes the inherent fairness of exercising personal jurisdiction over claims asserted against a [d]efendant over whom the Court already has personal jurisdiction with respect to another claim or claims arising out of the same nucleus of operative facts." *J.M. Smucker*, 420 F. Supp. 3d at 658 (citation omitted). "Under those circumstances, it makes little sense to dismiss or transfer such claims because doing so would not relieve the defendant from the obligation to appear and defend against other related claims, and would create inefficiencies by forcing claims arising out of a common nucleus of operative facts to be tried in different jurisdictions." *Id.* at 659 (citation omitted). The Sixth Circuit has not explicitly recognized this doctrine. *Id.* Several Circuit courts and district courts, however, have adopted it. *See e.g., United States v. Botefuhr*, 309 F.3d 1263, 1272–75 (10th Cir. 2002) (noting that "the majority of federal district courts and every circuit court of appeals to address the question have upheld the application of pendent personal jurisdiction.").

Importantly, however, in this Circuit "[t]he existence of pendent jurisdiction has been questioned[,] [a]s 'a plaintiff [] must secure personal jurisdiction over a defendant with respect to each claim she asserts,' [thus,] a jurisdictional issue arises" when a court utilizes pendent jurisdiction. *Kondash v. Kia Motors Am. Inc.*, No. 1:15-cv-506, 2016 WL 11246421, at *7 (S.D. Ohio June 24, 2016) (quoting 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.7 (4th ed. 2016)); *see also Bilek v. Burris*, No. 3:10-13-DCR, 2010 U.S. Dist.

LEXIS 118721, at *17–18 (E.D. Ky. Nov. 8, 2010) (noting that the Sixth Circuit has never adopted the doctrine of pendent personal jurisdiction and has addressed it in only one dissenting opinion where the judge declined to apply it).

Further, pendent personal jurisdiction is most frequently applied when the Court has personal jurisdiction over "some, but not all, of *a plaintiff's* related claims." *Id.* (quoting *Capital Spec. Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 668 (S.D. Ohio 2011)) (emphasis in original). This Court has previously declined to exercise its discretion to apply pendent jurisdiction when "*multiple plaintiffs*—not a single [p]laintiff—assert separate claims against the same [d]efendants." *Id.* (emphasis in original). In doing so this Court recognized that "[t]he Court has not located, nor have [the plaintiffs] cited to, any case in which a district court applied pendent jurisdiction to cover claims asserted by *other plaintiffs* against a defendant simply because a *different plaintiff's* claims *did* fall under the Ohio long-arm statute." *Id.* (emphasis in original); *see also Bilek*, 2010 U.S. Dist. LEXIS at *19 (noting that pendent jurisdiction is most often utilized in cases where jurisdiction is based on a nationwide service of process provision not a state long-arm statute and declining to exercise such jurisdiction in a diversity of citizenship case). The Court believed this application of pendent jurisdiction "raised serious Due Process Clause concerns." *Id.*; *see also Executone of Columbus, Inc. v. Inter-Tel Inc.*, No. 2:06-cv-126, 2006 WL 3043115, at *6 (S.D. Ohio Oct. 4, 2006) (declining to exercise pendent jurisdiction and noting that "[i]f the law were as [sic] the [p]laintiffs state[d], then for a defendant to be subject to specific jurisdiction on one claim by one plaintiff would suddenly make him vulnerable to general jurisdiction as to all other parties who arguably have claims arising out of the same transaction or occurrence with common questions of fact or law. This would unfairly allow [p]laintiffs to bypass the requirements of personal jurisdiction."); *Spratley*, 2017 U.S. Dist. LEXIS 147492 at *20–23 (declining to

exercise pendent jurisdiction over out of state plaintiffs' claims based only on specific jurisdiction over one resident plaintiff's state law claims and noting that other courts have declined to exercise pendent jurisdiction in this situation); *DeMaria v. Nissan N. Am., Inc.*, No. 15-CV-3321, 2016 U.S. Dist. LEXIS 11295, at *25–26 (S.D. Ill. Feb. 1, 2016) (declining to exercise pendent jurisdiction over non-resident plaintiffs' claims when the court found specific jurisdiction over claims of a single resident plaintiff noting that doing so would "run afoul of the traditional notions of fair play and substantial justice that form the bedrock of any court's personal jurisdiction analysis").

Plaintiffs ask the Court to exercise pendent jurisdiction over the claims of non-resident plaintiffs based solely on a single resident plaintiffs' claims over which the Court has personal jurisdiction. This is precisely the situation where this Court, and other district courts, have concluded that they should not use their discretion to rely on the doctrine of pendent jurisdiction.

The cases Plaintiffs cite do not persuade the Court it should conclude differently in this case. Plaintiffs cite cases in which courts exercised pendent jurisdiction over claims based on having personal jurisdiction over federal question claims. *See Sloan v. GM, LLC*, 287 F. Supp. 3d 840, 859 n.2 (N.D. Cal. 2018) (exercising pendent jurisdiction when plaintiffs brought a claim under the Magnuson Moss Warranty Act and declining to address whether *Bristol-Myers* would apply if jurisdiction had arisen exclusively on the basis of diversity); *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1172–73 (S.D. Cal. 2018) (noting that the court had federal question jurisdiction based on claims under the Clayton and Sherman Antitrust Act and thus the case fell within the typical pendent jurisdiction case where personal jurisdiction is found in one or more federal claims); *J.M. Smucker*, 420 F. Supp. 3d at 659 (exercising pendent jurisdiction over declaratory judgment claims based on finding personal jurisdiction on trademark infringement claims). Importantly, these federal courts emphasized the presence of a federal

question in deciding to exercise personal jurisdiction. *See id.*; *In re Packaged Seafood Prods.*, 338 F. Supp. 3d at 1172–73. There is no federal question here as the case is before the Court on diversity. As discussed above, the precedent for applying pendent jurisdiction in diversity cases is weak at best and the Court is not persuaded that exercising pendent jurisdiction here would comport with the Due Process Clause.

Finally, Plaintiffs argue that "the Court's exercise of jurisdiction here is the only sensible course," as "[i]t will impose no additional burden on [Defendants]." (Pls.' Resp. at 19.) While it may be true that exercising jurisdiction over Plaintiffs Portillo and Mull would be more efficient, the Court cannot offend Due Process Clause in order to create efficiency.

In sum, the Court does not have specific jurisdiction over Plaintiffs Portillo and Mull as they have not pleaded facts sufficient to show a prima facie case of jurisdiction under the Ohio long-arm statute and the Supreme Court has found due process would be offended if jurisdiction was exercised in this case. Defendants' Motion to Dismiss the claims brought by Plaintiffs Portillo and Mull is **GRANTED**.[2]

### 3. Personal Jurisdiction Regarding Putative Class Members' Claims

Defendants ask the Court to strike the class allegations in the Complaint under Federal Rule of Civil Procedure 12(f) and dismiss the class claims because "the Court would not have personal jurisdiction over the claims of nonresident class members under *Bristol-Myers*." (Defs.' Mot. Dismiss at 18.) The Court must consider whether *Bristol-Myers* applies to nationwide class actions pursuant to Rule 23. In *Bristol-Myers* Justice Sotomayor, in her dissent, noted that the Supreme Court did "not confront the question whether its opinion . . . would also apply to a class

---

[2] This Court joins the other district courts who have held that this holding does not prevent the named plaintiffs from recovering with the class if a class is certified and those plaintiffs qualify as class members. *See Lee v. Branch Banking & Trust Co.*, No. 18-21876, 2018 U.S. Dist. LEXIS 186340, at *11 n.1 (S.D. Fla. Oct. 31, 2018); *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 125–127 (D.D.C. Mar. 15, 2018).

action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." 157 S. Ct. at 1789 n.4. The parties state, and the Court agrees, that the Sixth Circuit has not addressed the question. (Defs.' Mot. Dismiss at 18; Pls.' Resp. at 19); *Progressive Health & Rehab. Corp. v. Medcare Staffing*, No. 2:19-CV-4710, 2020 U.S. Dist. LEXIS 100822, at *6 (S.D. Ohio June 8, 2020).

In fact, only two Circuit Courts have addressed the question, with the Seventh Circuit concluding the principles announced in *Bristol-Myers* do not apply to the case of a class action filed in federal court and the D.C. Circuit concluding the motion to dismiss putative class members was premature and should be filed after the class is certified. *See Mussat*, 953 F.3d at 441; *Molock*, 952 F.3d 293 at 298–99. District Courts addressing the question have taken three approaches. The first approach is the one the Seventh Circuit adopted, holding that *Bristol-Myers* does not apply outside of the context of mass tort cases and thus, does not apply to federal class actions. *See Simon v. Ultimate Fitness Grp., LLC*, No. 19 Civ. 890, 2019 U.S. Dist. LEXIS 147676, at *9 (S.D.N.Y. Aug. 19, 2019) (citing cases); *see also Progressive Health*, 2020 U.S. Dist. LEXIS 100822 at *6–7 (noting that the majority of lower courts have adopted the view that *Bristol-Myers* does not apply to Rule 23 class actions). This view sees no constitutional unfairness in subjecting a defendant to class claims of out-of-state plaintiffs as long as the court has jurisdiction over the class representative's claims. *See id.* In contrast, some district courts hold the opposite, in that the due process concerns that drove *Bristol-Myers* necessarily apply to nationwide class actions and thus, defendants cannot be subject to claims of non-resident class members. *See id.* at *9–10 (citing cases); *see also DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 U.S. Dist. LEXIS 7947, at *6–7 (N.D. Ill. Jan. 18, 2018) ("The [c]ourt believes that it is more likely than not based on the Supreme Court's comments about federalism that the courts will apply *Bristol-Myers* to outlaw

nationwide class actions in a form, such as this case, where there is no general jurisdiction over the [d]efendants."). Finally, some district courts, and the D.C. Circuit, defer the issue until after class certification, noting that unnamed plaintiffs are merely potential class members. *See id.* at *10 (citing cases); *see also Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 337 (E.D.N.Y. 2018) (citing the "unsettled nature of the law following *Bristol-Myers*" as another reason to defer on personal jurisdiction until after certification); *Simon v. Ultimate Fitness Grp.*, 2019 U.S. Dist. LEXIS 147676 at *10–11 (deferring questions regarding class claims until class certification).

This Court recently addressed the question when a plaintiff brought a Rule 23 nationwide class action under the Telephone Consumer Protection Act ("TCPA") and the Junk Fax Prevention Act ("JFPA"). *Progressive Health*, 2020 U.S. Dist. LEXIS 100822 at *2. The defendant filed a motion to dismiss arguing that the claims brought on behalf of nonresident putative class members should be dismissed because the defendant was not subject to general jurisdiction in Ohio. *Id.* at *2–3. This Court found the Seventh Circuit's reasoning persuasive, namely that *Bristol-Myers* is inapplicable because it arose in the context of consolidated individual suits not Rule 23 class actions. *Id.* at *7–8. Importantly, the Court stated, in Rule 23 actions absent class members are not full parties to the case for many purposes and are instead represented by the lead plaintiffs. *Id.* For example, class members as not considered parties for purposes of determining diversity and the amount in controversy. *Id.* at *8–9. This Court denied the defendant's motion to dismiss determining that "[b]ecause putative class members are not parties for determining personal jurisdiction and because [the defendant] concedes that specific personal jurisdiction exists over it as to the claim brought by [the named plaintiff] th[e] Court ha[d] specific personal jurisdiction over [the defendant] and [could] entertain the nationwide class claims."[3] *Id.* at *11–12. This case

---

[3] The Court also noted that while the Court was aware of the D.C. Circuit's decision to defer the question until after class certification, it found the case distinguishable because it asked whether the court retained personal jurisdiction

is similar to *Progressive Health* in that the defendant is seeking to dismiss putative class members who do not reside in Ohio for lack of personal jurisdiction.

The cases Defendants cite in support of their argument that *Bristol-Myers* applies are cases brought under the Fair Labor Standards Act ("FLSA"). *See Rafferty v. Denny's Inc.*, No. 5:18-cv-2409, 2019 WL 2924998 (N.D. Ohio July 8, 2019); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 849–51 (N.D. Ohio 2018); *see also Canday v. Anthem Cos.*, No. 1:19-cv-1084, 2020 U.S. Dist. LEXIS 18921, at *15 (W.D. Tenn. Jan. 3, 2020). This is significant because plaintiffs' opt-in to collective actions under the FLSA and thus these scenarios are more like mass tort actions than the opt-out Rule 23 class actions. *See Rafferty*, 2019 WL 2924998 at *13 n.11; *see also O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009) ("[O]pt-in employees [in a collective action] are party plaintiffs, unlike absent class members in a Rule 23 class action."); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA[.]"). Thus, the Court finds its recent decision regarding a class action more persuasive and analogous to the current case than the cases Defendants cite regarding FLSA actions.

Defendants argue that, if the class action can go forward, Plaintiffs' common-law claims will be subject to varying states' laws and therefore class treatment is inappropriate. First, this argument is more appropriately raised on a motion for class certification and not in arguing no personal jurisdiction. *See D. D. v. Wash. Cty.*, No. 2:10-cv-1097, 2011 U.S. Dist. LEXIS 27720, at *4 (S.D. Ohio Mar. 3, 2011) (noting that to certifying a class there must be common issues of

---

over absent class members. *See Progressive Health*, 2020 U.S. Dist. LEXIS 100822 at *7 n.1 (citing *Molock v. Whole Food Mkt. Grp., Inc.*, 952 F.3d 293, 298 (D.C. Cir. 2020)). In contrast, the question before the Court in *Progressive Health*, as is the question here, is whether the Court has personal jurisdiction over Defendants for the claims of the nationwide class. *Id.* "The distinction is important because jurisdiction over parties is a threshold issue and because district courts have the power to adjudicate a named plaintiff's ability to represent a class of individuals pursuant to [Rule 23(c)(1)(A).]" *See id.*

law or fact among class members). Additionally, in *Keeton v. Hustler Magazine, Inc.*, the Supreme Court explained that choice of law can be litigated "after jurisdiction over respondent is established," and that "choice-of-law concerns should [not] complicate or distort jurisdictional inquiry." 465 U.S. 770, 778, (1984). Thus, while the Court could strike class allegations prior to the motion to certify, the Court finds it prudent to assess the propriety of issues of class certification in the context of a fully brief motion rather than at the pleading stage. *See Geary v. Green Tree Serv., LLC*, No. 2:14-cv-522, 2015 WL 1286347, at \*17 (S.D. Ohio Mar. 20, 2015).

In sum, Defendants' arguments do not persuade the Court that it should come to an outcome different than it did in *Progressive Health*.[4] Though the Sixth Circuit has not yet addressed the issue, the Court concludes, as a majority of district courts have, that *Bristol-Myers* does not apply to Rule 23 class actions. Importantly, the plaintiffs in mass tort cases differ from the unnamed members of a class action which are not considered parties for important jurisdictional issues such as diversity and the amount in controversy. Further, there are additional due process safeguards for defendants in federal class actions because of the certification requirements in Rule 23.[5] *See*

---

[4] There is one significant difference between this case and *Progressive Health*, which is that the Court in this case has subject-matter jurisdiction based on diversity while the Court in *Progressive Health* had federal question jurisdiction. *See* 2020 U.S. Dist. LEXIS 100822 at \*2. Other district courts, however, have come to the same conclusion as the Court has in this case and in *Progressive Health*, that *Bristol-Myers* does not apply to Rule 23 class actions even when the case is before the court based on diversity jurisdiction. *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, No. 17-cv-564, 2017 U.S. Dist. LEXIS 155654, at \*16 (N.D. Cal. Sept. 22, 2017) (declining to extend *Bristol-Myers* to a Rule 23 class action before the district court on diversity jurisdiction); *Jones*, 330 F.R.D. at 310 (refusing to apply *Bristol-Myers* in a diversity case); *In re Chinese-Mfg. Drywall Prods. Liability*, No. 09-2047, 2017 U.S. Dist. LEXIS 197612, at \*61 (E.D. La. Nov. 30, 2017) (denying a motion to dismiss for personal jurisdiction based on *Bristol-Myers* in an MDL case with state claims); *contra Chenrus v. Logitech Inc.*, No. 17-673, 2018 U.S. Dist. LEXIS 70784, at \*5 n.3 (D.N.J. Apr. 27, 2018); *Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 U.S. Dist. LEXIS 128738, at \*14 (N.D. Ill. Aug. 1, 2018).

[5] Defendants' contend Rule 23 only protects absent class members' rights, but this is incorrect. (*See* Defs.' Reply at 19.) For example, Rule 23(b)(3)'s superiority and predominance requirements "ensure that the defendant is presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense. Given the requirement that class claims be coherent, it would be far less burdensome for Defendants to come to this forum to litigate the putative class members' claims than it was for the defendants in *Brystol-Myers* who faced the possibility of each plaintiff bringing unique claims against them." *Jones*, 330 F.R.D. at 312 (internal citations omitted).

*Jones v. Depuy Sythesis Prods.*, 330 F.R.D. 298, 312 (N.D. Ala. Nov. 20, 2018) ("To be sure, personal jurisdiction is governed by constitutional due process principles while these diversity jurisdiction principles are governed by statute. However, Rule 23 contains procedural safeguards that adequately protect Defendants' due process rights."). Thus, the Court **DENIES** Defendants' Motion to Dismiss the claims by non-resident putative class members and **DENIES** Defendants' Motion to Strike the Class allegations.

## IV.

Federal Rule of Civil Procedure 12 authorizes dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To meet this standard, the complaint must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the non-moving party, accepting as true all of plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Nonetheless, the Court must read Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8(a), requiring a short and plain statement of the claim showing that the plaintiff is entitled to relief. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 907 (S.D. Ohio 2013). Thus, the pleading's factual allegations, assumed to be true, must do more than create mere speculation or suspicion of a legally cognizable claim; they must show entitlement to relief. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Further, "the tenet that courts must accept a complaint's allegations as true is inapplicable to threadbare recitals

of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 662. As such, while a plaintiff is not required to set forth detailed factual allegations at the pleading stage, a complaint must contain a basis upon which relief can be granted; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *See id.* at 679; Fed. R. Civ. P. 8(a).

Defendants argue the claims must be dismissed because: (1) Plaintiffs' claims are preempted by the National Bank Act ("NBA"); (2) Ohio, Washington and Texas law applies, (3) Plaintiffs' inability to assert a breach of contract claim forecloses their ability to claim a breach of the covenant of good faith and fair dealing; (4) unconscionability is not a basis for recovering damages; (5) disagreements over debts owed cannot give rise to conversion; and (6) the Deposit Agreement cannot be evaded with a claim of unjust enrichment.

### 1. National Banking Act and Preemption

Defendants argue that this case should be dismissed because the decision to assess overdraft fees is protected by federal banking law, which preempts each of Plaintiffs' state law claims. (Defs.' Mot. Dismiss at 7–8). Specifically, Defendants assert that the NBA has broad preemptive power that grants national banks broad discretion to impose deposit-related fees and charges for banking services. (*Id.* at 8). Defendants contend that Plaintiffs' state law claims are "squarely" preempted because several courts have concluded that the NBA grants Banks the authority to collect and set fees without interference. (*Id.* at 10).

Plaintiffs argue that their state law claims do not conflict with the NBA. (Pls.' Resp at 14). Plaintiffs contend that preemption is only available under three circumstances, which include express preemption, field preemption, and conflict preemption. (*Id.*) According to Plaintiffs, the NBA does not expressly preempt the state law claims alleged here nor does the NBA occupy the

entire national banking field. (*Id.* at 14–15). Plaintiffs also argue that conflict preemption does not apply because Defendants have not established an irreconcilable conflict between the state law claims and the NBA. (*Id.* at 15–16). Plaintiffs' contentions are well-taken.

The Supremacy Clause of the United States Constitution mandates that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." *United States v. Napier*, 233 F.3d 394, 404 (6th Cir. 2000) (citing U.S. Const. Art. VI). Accordingly, any state law that conflicts with federal law is "without effect." *King v. Ford Motor Co.*, 209 F.3d 886, 891 (6th Cir. 2000) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)).

Ordinarily, a presumption against preemption applies. *See United States v. Locke*, 529 U.S. 89, 108 (2000); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). But, in the context of national banking, the Supreme Court has explained that the presumption against preemption does not apply. *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 280 (6th Cir. 2009) (citing *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 12 (2007)). Also important is that in addressing the question of preemption, "the standard for preemption does not change simply because national banks are involved." *Owensboro Nat'l Bank v. Moore*, 803 F. Supp. 24, 34 (E.D. Ky. Aug. 4, 1992).

The Supreme Court in *Cipollone v. Liggett Group, Incorporated* explained that a federal law preempts state law under three circumstances. 505 U.S. at 545. Generally, federal preemption occurs if a congressional act contains an express preemption provision, if Congress intends for the act to occupy a field exclusively, or if the act directly conflicts with state law, such that it is impossible to comply with both the state and federal provision. *Sprietsma v. Mercury Marine, Div. of Brunswick Corp.*, 537 U.S. 51, 64 (2002)

Here, Defendants do not argue that the NBA contains an express preemption provision. Instead, Defendants' argue that Plaintiffs' claims are barred under the doctrines of field and conflict preemption. Each of these theories is discussed below.

### a. Field Preemption

"Field preemption exists 'where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *State Farm Bank, FSB v. Reardon*, 539 F.3d 336, 342 (6th Cir. 2008). The NBA is not so pervasive that it gives rise to a reasonable inference that Congress left no room for States to supplement it.

The Court notes that the NBA "constitutes the paramount authority for the operation of national banking associations, and, by itself, constitutes a complete system for the establishment and government of national banks." *Owensboro Nat'l Bank v. Moore*, 803 F. Supp. at 30 (citing *First National Bank in Plant City, Fla. v. Dickinson*, 396 U.S. 122 (1969); *Deitrick v. Greaney*, 309 U.S. 190 (1940)). Yet, the Sixth Circuit has explained that national banks may be subject to state laws, so long as those state laws do not conflict with or frustrate the purpose of laws of the United States. *See Starr v. O'Connor*, 118 F.2d 548, 555 (6th Cir. 1941). Thus, States may supplement the NBA so long as the supplementation does not conflict with or frustrate its purpose. Here, the state claims alleged do not frustrate the purposes of the NBA. Plaintiffs' claims are not barred by the doctrine of field preemption.

### b. Conflict Preemption

"Conflict preemption exists where the federal law is in 'irreconcilable conflict' with state law." *Abel v. Keybank United States*, 313 F. Supp. 2d 720, 723 (N.D. Ohio Mar. 4, 2004) (citing *Barnett Bank, N.A. v. Nelson*, 517 U.S. 25, 31 (1996)). The Supreme Court has explained that:

A conflict will be found" where compliance with both federal and state regulations is a physical impossibility . . . " or where the state "law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress."

*Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158 (1978) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963); *Hines v. Davidowitz*, 312 U.S. 52 (1941)).

Plaintiffs argue that their state law claims are not preempted because their claims do not create an irreconcilable conflict with the NBA. (Pls.' Resp. at 15.) According to Plaintiffs, while the NBA gives Defendants the right to charge overdraft fees, it does not authorize banks to ignore general contract and tort law. (*Id.*) Plaintiffs assert that they are not challenging Defendants' ability under the NBA to assess overdraft fees generally, nor are they challenging the Defendants' ability to exercise some measure of discretion over the charging of overdraft fees. (*Id.*) Instead, Plaintiffs emphasize that they are challenging Defendants' decision to implement overdraft fees in bad faith. (*Id.* at 16.) Plaintiffs, therefore, argue that their claims do not prohibit Defendants' ability to comply with the NBA because Defendants can comply with the NBA and simultaneously adhere to the principles of good faith and fair dealing. (*Id.*)

Defendants argue that Plaintiffs' state law claims interfere with their ability to determine and collect non-interest fees, such that they are preempted by federal law. (Defs.' Mot. Dismiss at 9.) In arguing for preemption, Defendants rely heavily on *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 280 (6th Cir. 2009). (*Id.*) According to Defendants, the facts of that case are analogous to this case and, consequently, this Court should dismiss Plaintiffs' state law claims for the same reasons the Sixth Circuit dismissed the state law claims in *Monroe Retail*. (*Id.*) Further, Defendants assert that the Officer of the Comptroller of the Currency ("OCC") offers national banks broad discretion in assessing overdraft fees. (*Id.* at 10.) According to the OCC's regulations, banks are directed to establish their charges and fees on a competitive basis," and they are also

obliged to employ certain measures to deter overdrafts by customers. *See* 12 C.F.R. § 7.4002. Defendants argue that these considerations prevent Plaintiffs from bringing state law claims because such claims interfere with the federal regulation. (*Id.*)

The OCC has regulatory and supervisory power over national banks and has issued regulations defining the "incidental powers" a national bank may exercise without state interference. *Monroe Retail*, 589 F.3d at 280. The relevant OCC regulations direct banks to establish their charges and fees on a "competitive basis." 12 C.F.R. § 7.4002(b). The regulations also state that "the establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles." *Id.* Further, the Supreme Court has explained that states may not "prevent or significantly interfere with [a] national bank's exercise of its powers." *Monroe Retail*, 589 F.3d at 283 (citing *Barnett Bank, N.A. v. Nelson*, 517 U.S. at 33). "When state laws 'significantly impair the exercise of authority, enumerated or incidental under the NBA,' the state laws 'must give way.'" *Id.* (citing *Watters*, 550 U.S. at 12). The level of interference required for preemption is "not very high." *Id.* (citing *Ass'n of Banks in Ins., Inc. v. Duryee*, 270 F.3d 397, 409 (6th Cir. 2001)).

In *Monroe Retail*, banks were charging creditors service fees for garnishing debtors. *Id.* at 277. Specifically, the banks were deducting the service fees directly from the debtors' bank accounts before transmitting the debtors' funds to the creditors. *Id.* The creditors alleged that the banks were in violation of Ohio state law, which required the banks to release the debtors' funds before deducting service fees. *Id.* at 280. The Sixth Circuit highlighted that 12 C.F.R. § 7.4002(a) provides banks broad authority to "charge [their] customers non-interest charges and fees, including deposit account service charges." *Id.* at 281. The Court also noted that the OCC had

provided an opinion letter on the issue, which concluded that the banks were authorized to collect the garnishment fees. *Id.* at 283. Ultimately, the Sixth Circuit held that the Ohio law significantly interfered with the bank's power to charge fees because the NBA's grant of authority to charge fees includes the authority to determine service fees for the garnishment process. *Id.* at 284.

*Monroe Retail* is distinguishable from this case. *Monroe Retail* did not involve a bank's rights to assess overdraft fees. In contrast to the issue in *Monroe Retail*, the OCC has not released an opinion letter on overdraft fees.

Defendants also argue that other courts have struck down state law claims similar to those advanced here. Specifically, Defendants point to *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 556 (9th Cir. 2010) and *Montgomery v. Bank of Am. Corp.*, 515 F. Supp. 2d 1106, 1113–14 (C.D. Cal. 2007).

In *Martinez* the Ninth Circuit held that the NBA preempted the plaintiffs' state law fraudulent conduct claim against Wells Fargo for the bank's failure to disclose certain costs related to the bank's services. *Martinez*, 598 F.3d at 552. The plaintiffs predicated their claims on two fees that Wells Fargo charged when they refinanced the plaintiffs' home mortgage loan. *Id.* One fee amounted to a $800 underwriting charge, and the other amounted to $75 for tax services that Wells Fargo allegedly marked up and passed on to the plaintiffs. *Id.* at 552, n.2. The Ninth Circuit concluded that the plaintiff's claims conflicted with Wells Fargo's fee-setting power under 12 C.F.R. § 7.4002(b)(2), explaining that: "[i]n essence the [plaintiffs] argue that these fees are too high, and ask the court to decide how much an appropriate fee would be." *Id.* at 556. Ultimately, the NBA preempted the plaintiffs' claims given that the OCC provided banks with broad discretion to set appropriate fees. *Id.*

In *Montgomery,* the court dismissed the plaintiff's state law claims "based on the amount of and means of disclosure of [Overdraft Fees] assessed by defendants" under the conclusion that 12 C.F.R. § 7.4002 preempted those claims. *Montgomery*, 515 F. Supp. 2d at 1113. In so doing, the court explained that the plaintiff's claim concerning the amount of overdraft fees was subject to preemption because under OCC regulations "[a] national bank may charge its customers non-interest charges and fees, including deposit account service charges." *Id.* In that same vein, the court observed that the regulations permit national banks to establish the amounts charged "according to sound banking judgment and safe and sound banking principles." *Id.* The bank also noted that the plaintiff's claims concerning the disclosure of overdraft fees were likewise subject to preemption because the regulations permit national banks to establish the amounts charged "according to sound banking judgment and safe and sound banking principles." *Id.* at 1114.

Neither *Martinez* nor *Montgomery* are instructive here. Plaintiffs do not predicate their claims on the contention that Defendants' overdraft fees are too high, which, as the Ninth Circuit explained, was the primary allegation in *Martinez*. For that reason, this Court is equally convinced that *Montgomery*. is distinguishable.

Several courts have rendered decisions on facts more analogous than those highlighted above. In *Gutierrez v. Wells Fargo Bank*, the court examined specifically whether federal law preempted general state law claims, in the context of a challenge to assessed overdraft fees. *See* Case No. 07-05923, 2008 U.S. Dist. LEXIS 70124, at *19-36 (N.D. Cal Sept. 11, 2008). The court explained that, although "preemption would likely apply if a customer were challenging a bank's fundamental right to employ an overdraft fee at all," there was no preemption because the issue was "whether Wells Fargo [had] been manipulating—indeed downright altering—customers' transaction records so as to maximize overdraft penalties imposed on customers." *Id.* at *20.

The court in *White v. Wachovia Bank,* addressed a similar issue, but under Georgia state law. 563 F. Supp. 2d 1358, 1367 (N.D. Ga. 2008). The court ultimately held that, "while the lawsuit may incidentally implicate [the defendant bank's] largest-to-smallest transaction posting policy, it, more importantly, claims that [the defendant bank's] policy allows the routine imposition of an overdraft fee for transactions that do not result in an actual overdraft. This allegation which forms the basis for all of its claims is not of a regulatory nature that would subject it to federal preemption. *Id.*

In yet another case, *In re Checking Account Overdraft Litigation*, the plaintiffs alleged state law claims for breach of contract and the covenant of good faith and fair dealing, unconscionability, unjust enrichment, and conversion, which were premised on the bank's allegedly wrongful overdraft policies. 694 F. Supp. 2d 1302, 1309–1310 (S.D. Fla. Mar. 11, 2010). The court examined whether state law claims were preempted under the doctrine of conflict preemption. *Id.* at 1311. The court explained that, "federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or general purpose of the NBA." *Id.* at 1312 (citing *Watters*, 220 U.S. at 12). Ultimately, the court concluded that the state law claims were not preempted because they did not conflict with the NBA. *Id.* at 1313–14. In so doing, the Court noted that that while § 7.4002 gives banks the right to charge overdraft fees, certain state laws of general application such as those founded in contract and tort do not conflict with the authority or purpose of the NBA. *Id.*

The Court finds the *Gutierrez*, *White*, and *In re Checking Account* line of cases instructive here. Plaintiffs bring state law claims for breach of the covenant of faith and fair dealing, unconscionability, and unjust enrichment, all of which are based in contract, as well as a state law claim for conversion which is based in tort. Plaintiffs' claims do not focus on the business of

banking explicitly. Instead, they are predicated on state law of general application. Moreover, Plaintiffs do not challenge Defendants' authority to assess overdraft fees *per se*, they instead challenge the allegedly unlawful manner by which the bank has come to assess said fees. As such, Plaintiffs allegations only incidentally affect Defendant's authority to assess overdraft fees and are not preempted. Defendants' motion to dismiss the claims because they are preempted is **DENIED**.

## 2. Choice of Law

The parties disagree as to which states' law applies to the claims. Thus, before moving to the parties' arguments as to Plaintiffs' failure to state a claim, the Court must determine which law applies.[6]

In order to determine which states' choice of law principles are applicable, "[a] federal court sitting in diversity must apply the law of the forum state." *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 949 (S.D. Ohio 2002); *Baker v. Hughes Inc. v. S&S Chem., LLC*, 865 F.3d 554, 560 (6th Cir. 2016). Thus, Ohio choice of law principles will determine which law should be applied to this case whether this case. In Ohio, which follows the Restatement (Second) of Conflict of Laws, a court must determine whether the cause of action sounds in contract or tort before applying the choice of law principles, because different choice of law principles apply to different causes of action. *See Ohayon v. Safeco Inc. Co. of Ill.*, 757 N.E.2d 206 (Ohio 2001) (citing Restatement (Second) Conflict of Law at 18, § 17, cmt. b). Plaintiffs' Complaint includes both contract and tort claims.

---

[6] Courts must engage in individualized choice of law analysis for each plaintiffs' claims when the case is a class action. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). "The individualized choice of law analysis, however, is only necessary once the class seeks certification." *O'Bryan v. Holy*, 556 F.3d 361, 381 n.8 (6th Cir. 2009). While the class remains a putative class, courts focus on the application of the forum's choice of law rules to the named plaintiffs." *Id.* Thus, at this stage in the case the Court only needs to focus on the choice of law for the remaining named plaintiff, Plaintiff Wiggins.

### a. Contract Claims

Beginning with the contract claims of breach of covenant of good faith and fair dealing, unconscionability, and unjust enrichment, the parties acknowledge that they have agreed to a choice of law provision in their contracts. The Deposit Agreement states:

> This Agreement, and your and our rights and obligations under this Agreement, are governed by and interpreted according to federal law and the law of the state where your account is located . . . We ordinarily maintain your account at the financial center where we open your account. However, we may transfer your account to another financial center in the same state or in a different state.

(Compl., Ex. A.) The Deposit Agreement contains a forum selection clause, which would require the Court to apply Ohio law, because Plaintiff Wiggins's checking account is located in Ohio. (*See id.*; Compl. ¶ 7.)

Forum selection clauses in contracts are generally enforceable by federal courts and Ohio courts. *AMF, Inc. v. Computer Automation, Inc.*, 573 F. Supp. 924, 925 (S.D. Ohio 1983) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13 (1972)); *McKinney v. Microsoft Corp.*, No. 1:10-cv-354, 2011 U.S. Dist. LEXIS 165507, at *12 (S.D. Ohio May 12, 2011) ("[W]hen interpreting contracts in a diversity action, the Sixth circuit has also stated that courts should 'generally enforce the parties' contractual choice of forum and governing law.'" (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007) (citation omitted)). Defendants argue the forum selection clause controls and Ohio law applies. (Defs.' Mot. Dismiss at 11 n.6.) Plaintiffs state the choice of law provision does not control because it is illusory and unconscionable. (Pls.' Resp. at 4 n.2.)

In arguing the contract provision is illusory and unconscionable, Plaintiffs misstate the inquiry the Court must make in determining whether the choice of law provision in the parties' contract applies. Under Ohio law, a choice of law provision is binding on the parties unless

(1) "there is no [] reasonable basis for the parties' choice," or (2) application of the chosen law would violate a "fundamental policy" of the state which (a) has a "materially greater interest . . . in the determination of the particular issue," and (b) is the state whose law would apply in the "absence of an effective choice of law by the parties." *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 715 (6th Cir. 2015) (quoting Restatement (Second) of Conflict of Laws § 187(2)) (also noting that the plaintiff's argument that the contract was one of adhesion is an incorrect understanding of Ohio's choice of law principles).

Here, the first exception does not apply because there is a reasonable basis for the parties' choice of law. The Complaint states that Plaintiff Wiggins maintains her checking account in Defendants' financial institution located in Ohio. (Compl. ¶ 7.) Additionally, the Complaint states Plaintiff Wiggins is a citizen of Ohio. (*Id.* ¶ 8.) Thus, Ohio law reasonably governs Plaintiff Wiggins' claims as he is a resident of Ohio. Similarly, the second exception does not apply. The Court must determine whether enforcing the choice of law provision in the parties' contracts would be contrary to a fundamental policy of Ohio. For Plaintiff Wiggins, applying Ohio law certainly is not contrary to a fundamental policy of Ohio. Thus, Ohio law, in accordance with the parties' contract, applies to Plaintiff Wiggins' contract claims.

### b. Tort Claim

In tort actions, Ohio courts look to the §§ 145 and 146 of the Restatement for guidance. *Avery Dennison Corp. v. Juhasz*, 924 F. Supp. 2d 893, 897 (N.D. Ohio 2013). "Section 146 of the Second Restatement creates a presumption in tort actions that the substantive law of the place of injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 339 (Ohio 1984)). Section 145 of the Restatement offers several factors to be used in determining

the state with the most significant relationship to the issue.  Under § 145, a court must determine

the applicable law as follows:

> (1) The rights and liabilities of the parties with respect to an issue in tort are
> determined by the local law of the state which, with respect to that issue, has the
> most significant relationship to the occurrence and the parties under the principles
> stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine
> the law applicable to an issue include:
>
> > (a) the place where the injury occurred,
> > (b) the place where the conduct causing the injury occurred,
> > (c) the domicile, residence, nationality, place of incorporation, and place of
> > business of the parties, and
> > (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (1971).  These factors "are to be evaluated

according to their relative importance with respect to the particular issue." *Id.*

Defendants contend under Restatement Sections 145 and 146 Ohio law applies to the

conversion claim because the place of injury in claims related to bank accounts is the state where

the account is located, which in this case, is Ohio. (Defs.' Mot. Dismiss at 11–12 n. 6.)  Plaintiffs

contend Restatement Section 188 applies and results in the application of North Carolina law.

Defendants' argument is well-taken.

Section 188 is applicable not to tort claims, but to contract claims when there is no agreed

upon choice of law among the parties. *See Jamhour*, 211 F. Supp. 2d 949; S*chulke Radio Prod.*

*Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683 (1983) (adopting section 187); *Gries Sports Ent.*

*Inc., v. Modell,* 473 N.E.2d 807 (1984) (adopting section 188).  Thus, this section is inapplicable

here.  Instead, Sections 145 and 146 of the Restatement applies to Plaintiff Wiggins's conversion

claim. *See Taglieri v. Monasky*, No. 1:15CV1052, 2018 WL 7575036, at *4 (N.D. Ohio Ja. 10,

2018) (applying § 147 to a conversion claim).  Additionally, Defendants are correct that the place

of injury for Plaintiffs' conversion claim is the state where the account is located, which is Ohio. *See id.* Thus, Ohio law applies to Plaintiff Wiggins's conversion claim. *See id.* Having determined that Ohio law applies to all of the claims, the Court moves to Defendants' arguments as to Plaintiff Wiggins's failure to state a claim upon which relief may be granted.

### 3. Claim 1: Breach of the Covenant of Good Faith and Fair Dealing

Plaintiffs allege that "[s]ince at least 2003, Bank of America has breached the covenant of good faith and fair dealing in the Deposit Agreement and Schedule of Fees through its overdraft policies and practices as alleged herein." (Compl. ¶ 41.) Defendants contend Plaintiffs cannot make out this claim because they did not allege a cause of action for breach of contract. (Defs.' Mot. Dismiss at 12.) A claim of a breach of good faith and fair dealing "is part of a contract claim and does not stand alone." *Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996); *see also Patrick v. CitiMortgage, Inc.*, 676 F. App'x 573, 577 (6th Cir. 2017) ("Ohio law recognizes only a breach of contract claim; it does not recognize a free-standing or independent claim for breach of the covenants of good faith and fair dealing."). The cases Plaintiffs cite for their proposition that their claim can survive does not support their argument. *See Littlejohn v. Parrish*, 839 N.E.2d 49, 54 (Ohio Ct. App. 2005) (noting previous cases were not intended to overrule the "prevailing view—that the good-faith-and-fair-dealing requirement is part of the contract—not a separate tort claim").

Plaintiffs have not brought a breach of contract claim. Thus, Plaintiffs' free-standing claim for a breach of the covenants of good-faith and fair dealing does not state a claim for relief which can be granted and is **DISMISSED**.

### 4. Claim 2: Unconscionability

Plaintiffs allege that "Bank of America's overdraft policies and practices are substantively

33

and procedurally unconscionable." (Compl. ¶ 46.) Defendants contend Plaintiffs cannot recover damages under a claim for unconscionability because unconscionability is a defense to enforcement of a contract. (Defs.' Mot. Dismiss at 13.) "[U]nconscionability is a *defense* against enforcement, not a basis for recovering damages." *Doe v. SexSearch.com*, 511 F.3d 412, 419 (6th Cir. 2008) (citing Restatement (Second) of Contracts § 208 ("If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term . . . ")); *see also Miller v. First Saftey Bank*, No. 1:14-cv-368, 2014 WL 12586315, at *11 (S.D. Ohio Dec. 30, 2014) (dismissing unconscionability claim and noting that "unconscionability is no recognized as a separate and distinct cause of action under Ohio law"). Defendants, therefore, are correct that Plaintiffs cannot bring an affirmative unconscionability claim strictly for damages.

Importantly, however, district courts in this circuit have recognized that plaintiffs can bring a claim for unconscionability seeking declaratory relief. *See Elmy v. Western Express, Inc.*, No. 3:17-cv-1199, 2020 U.S. Dist. LEXIS 63720, at *9–*10 (M.D. Tenn. Apr. 10, 2020) (allowing the plaintiff to assert an unconscionability claim because it sought only declaratory relief); *Eva v. Midwest Nat'l Mortg. Banc., Inc.*, 143 F. Supp. 2d 862, 895 (N.D. Ohio 2001) (noting that although unconscionability is typically an affirmative defense it can also support a claim for declaratory relief). Our sister district court explained that "[t]o find otherwise would be to hold that a party who has entered into an unconscionable contract would have to breach it, get sued, and raise unconscionability as a defense before the Court may examine the enforceability of the contract." *Eva*, 143 F. Supp. 2d at 895. Plaintiffs brought a claim seeking declaratory relief that the contract is unconscionable and thus, the claim will not be dismissed on the ground that the claim cannot be brought as a claim for damages.

Defendants next argue that even if Plaintiffs can bring a claim for unconscionability, they cannot show either procedural or substantive unconscionability. "In Ohio, unconscionability is defined as 'an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party.'" *Jones*, 16 F. Supp. 3d at 935 (citing *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 680 N.E.2d 240, 243 (Ohio Ct. App. 1996)). Ohio courts use a two-prong inquiry to determine whether a contract is unconscionable. *Id.*; (citing *Dorsey*, 680 N.E.2d at 243). The first is procedural unconscionability, which "focuses on the relative bargaining power of the contracting parties." *Id.* (citing *Dorsey*, 680 N.E.2d at 243). The second is substantive unconscionability, which "looks at whether the contract terms are [] unfair and unreasonable." *Id.* (citing *Dorsey*, 680 N.E.2d at 243).

A finding of unconscionability requires both procedural and substantive unconscionability. *Thomas v. Hyundai of Bedford*, No. 108212, 2020 Ohio App. LEXIS 161, at \*10 (Ohio Ct. App. Jan. 23, 2020). The party asserting unconscionability of contract bears the burden of proving the agreement is both procedurally and substantively unconscionable. *Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009). Unconscionability is a "fact-sensitive question" requiring "a case-by-case review of the surrounding circumstances." *Arnold v. Burger King*, 48 N.E.3d 69, 85 (Ohio Ct. App. 2015) (internal citations omitted); *Thomas*, 2020 Ohio App. LEXIS 161 at \*10; *Hayes*, 908 N.E.2d at 413 ("The presence or absence of absence of any single factor is generally insufficient" to find unconscionability.").

Defendants contend that because the Deposit Agreement warned Defendants charged an overdraft fee and disclosed its amount, Plaintiffs cannot show unconscionability. (Defs.' Mot. Dismiss at 14.) Additionally, Defendants note that unequal bargaining power among the Bank and its customers is not enough to show unconscionability. (Defs.' Reply at 10–11.) Plaintiffs point

out the contract was one of adhesion given to customers on a take it or leave it bases, without explanation, burying important terms, and allowing the Bank to "unilaterally apply[] one-sided, bad faith practices upon everyday customers with no bargaining power." (Pls.' Resp. at 12.) Additionally, Plaintiffs argue the imposition of overdraft fees up to 3,5000 times more than the overdraft and not reasonably related to the Bank's cost of covering the overdraft is itself unconscionable. (*Id.*)

The question for the Court at this time is not whether the Deposit Agreement and associated fees is unconscionable as a matter of law, "but whether Plaintiffs have alleged sufficient facts to state a *prima facie* case of unconscionability." *In re Porche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liability Litig.*, 880 F. Supp. 2d 801, 822 (S.D. Ohio 2012). Plaintiffs have made such a showing. Plaintiffs have alleged the bargaining power was vastly unequal in that customers were asked to sign a contract by a national bank with great business experience, without any explanation or any of the important terms brought to their attention. (Compl. ¶ 47.) This, while not enough in itself to show unconscionability, is relevant. *See Garrett v. Hooters-Toledo*, 295 F. Supp. 2d 774, 784 (N.D. Ohio 2003) (considering Plaintiff's "lack of sophistication" in whether the contract was unconscionable); *Arnold v. Burger King*, 48 N.E.3d 69, 86 (Ohio Ct. App. 2015) (noting the employer had a unique and superior knowledge of the employment environment at the time the contract was entered into); *Jones v. U-haul Co. of Mass. & Ohio*, 16 F. Supp. 3d 922, 936 (S.D. Ohio 2014); (noting as relevant to the unconscionability analysis that the plaintiff had a high school education, could read and write, and had extensive work experience); *Webster v. Freedom Debt Relief, LLC*, No. 1:10-cv-1587, 2011 U.S. Dist. LEXIS 85843, at *27 (S.D. Ohio July 13, 2011) ("[T]hat there was an inequality of bargaining power between the parties do not, by themselves, make a contract provision unconscionable.").

Additionally, Plaintiffs have alleged the important language in the contract was hidden, ambiguous, misleading, and within an adhesion contract provided to customers on a take it or leave it basis. (Compl. ¶¶ 46–47.) The adhesive nature of a contract is relevant to unconscionability. *Peltz v. Moyer*, No. 06 BE 11, 2007 Ohio App. LEXIS 4409, at *19 (Ohio Ct. App. Sept. 17, 2007) ("[W]hether an arbitration clause is contained in an adhesion contract is a fact to consider in addressing whether it is procedurally unconscionable."); *Arnold*, 48 N.E.3d at 86 (finding no evidence the plaintiff, seeking employment with the defendant, had any ability to alter the terms of the agreement the employer had written); *Garrett v. Hooters-Toledo*, 295 F. Supp. 2d 774, 784 (N.D. Ohio 2003) (noting the "[p]laintiff had no opportunity to negotiate the terms of the agreement"). In pleading inequal bargaining power combined with an unfair and adhesive contract, Plaintiffs have plead procedural unconscionability.

Further, Plaintiffs have alleged the terms of the contract were unfair, deceptive, oppressive, commercially unreasonable, and against public policy. (Compl. ¶¶ 46–47.) Through pleading that the Deposit Agreement contains terms unreasonably favorable to the Bank over its customers, Plaintiffs have plead substantive unconscionability. *Gilchrsity v. Inpatient Med. Servs., Inc.*, No. 5:09cv2345, 2010 U.S. Dist. LEXIS 86199, at *9 (N.D. Ohio Aug. 23, 2010). In sum, dismissal of this claim is not appropriate at this time as Plaintiffs have plead a claim of unconscionability. The motion to dismiss this claim is **DENIED**.

### 5. Claim 3: Conversion

Plaintiffs allege that "Bank of America has wrongfully converted" the listed "specific and readily identifiable funds" including "overdraft fees." (Compl. ¶¶ 52, 58.) A claim for conversion, defined as the "wrongful exercise of dominion or control over property belonging to another, in denial of or under a claim inconsistent with his rights," *Bench Billboard Co. v. Columbus*, 579

N.E.2d 240 (Ohio Ct. App.1989), requires proof of "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Dice v. White Family Cos.,* 878 N.E.2d 1105 (Ohio Ct. App. 2007) (quoting *Haul Transp. of VA, Inc. v. Morgan,* No. CA 14859, 1995 WL 328995, at *3 (Ohio Ct. App. June 2, 1995)).

A plaintiff can state a claim for conversion involving money only where the funds are "earmarked" or otherwise specifically capable of identification, such as "money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered." *Morgan,* 1995 WL 328995, at *4 (citation omitted). In other words, "[a]n action will not lie for the conversion of a mere debt." *NPF IV, Inc. v. Transitional Health Servs.,* 922 F. Supp. 77, 82 (S.D. Ohio 1996). "[A]nd where there is only a relationship of debtor and creditor, not an obligation to return identical money, an action for conversion of the funds representing the indebtedness will not lie against the debtor." *Id.* Thus, conversion occurs "where there is an obligation to keep intact and deliver specific money, 'rather than to merely deliver a certain sum.'" *Macula v. Lawyers Title Ins. Corp.,* No. 1:07CV1545, 2008 WL 3874686, at *5 (N.D. Ohio Aug.14, 2008) (quoting *Morgan,* 1995 WL 328995, at *4).

Plaintiffs state the funds that were converted are "readily identifiable," but do not actually identify such funds. Instead, Plaintiffs rely on North Carolina law and assert that conversion only requires two elements, neither of which are that the funds are readily identifiable. The Court has concluded Ohio law applies and thus, Plaintiffs must show the funds are capable of identification and not merely a debt. *See Morgan*, 1995 WL 328995 at *4; *NPF IV*, 922 F. Supp. at 82. Plaintiffs Complaint fails to allege readily identifiable funds in more than a conclusory manner and thus, Defendants' motion to dismiss this claim is **GRANTED**.

### 6. Claim 4: Unjust Enrichment

Plaintiffs allege that Defendants "knowingly provided banking services to Plaintiffs and members of the Class that were unfair, unconscionable, and oppressive" and "knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class." (Compl. ¶¶ 64–65.) "To establish unjust enrichment, a plaintiff must demonstrate '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment[.]'" *Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 799 (6th Cir. 2009) (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984) (quotations and citation omitted)). "Recovery under unjust enrichment is designed to compensate the plaintiff for the benefit he has conferred upon another, not to compensate him for a loss suffered." *Jones v. Jones*, 903 N.E.2d 329, 337 (Ohio Ct. App. 2008).

"Unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that operates *in the absence of an express contract or a contract implied in fact* to prevent a party from retaining money or benefits that in justice and equity belong to another." *Beatley v. Beatley*, 828 N.E.2d 180, 192–93 (Ohio Ct. App. 2005) (quotations and citations omitted) (emphasis added). Thus, "Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject." *Lehmkuhl v. ECR Corp.*, No. 06 CA 039, 2008 WL 5104747, at *5 (Ohio Ct. App. Dec. 2, 2008).

Defendants argue Plaintiffs' cannot state a claim for unjust enrichment because "an express contract covers the same subject as their unjust enrichment claim," the Deposit Agreement. (Defs.' Mot. Dismiss at 17.) Plaintiffs contend that because "the scope and terms of the pertinent contract

remain in dispute," the unjust enrichment claim, plead in the alternative, is neither duplicative of nor incompatible with, the simultaneously alleged contract." (Pls.' Resp. at 13.)

The Court agrees with Defendants that the unjust enrichment claim, as stated in the Complaint, cannot succeed because there is an express contract which governs the subject, the Deposit Agreement. Importantly, this would not require dismissal of the claim at this time if the claim had been plead in the alternative because Federal Rule of Civil procedure 8(a)(3) permits pleadings in the alternative "when, for instance, there is a dispute between the parties as to whether an express agreement exists." *Solo v. UPS Co.*, 819 F.3d 788, 796 (6th Cir 2016) (citation omitted); *see also Sutter O'Connel Co. v. Whirlpool Corp.*, No. 1:18CV2800, 2019 U.S. Dist. LEXIS 100897, at *8 (N.D. Ohio June 13, 2019) (denying a motion to dismiss a claim of unjust enrichment noting it was premature to do so because defendant's argument impliedly disputed the existence of the contract). As discussed above, Plaintiffs' have stated a claim that the contract cannot be enforced because it is unconscionable. Thus, the validity of the contract is in dispute. Importantly, however, Plaintiffs' Complaint does not plead this claim in the alternative. Thus, while the claim must be dismissed at this juncture, the dismissal is without prejudice and Plaintiffs' are permitted to amend their complaint and plead this claim in the alternative and make clear that the claim is plead based on a potential finding of no valid contract governing the dispute. The motion to dismiss this claim is **GRANTED**.

## V.

For the reasons stated herein, Defendants' Motion to Dismiss and Strike Plaintiffs' Complaint (ECF No. 11) is **GRANTED in part and DENIED in part**. Additionally, the Motion for Oral Argument to Motion to Dismiss and Strike (ECF No. 65) is **DENIED.**

**IT IS SO ORDERED.**

9-21-2020
_____
DATE

_____
EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE