**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KELSEA D. WIGGINS, et al.,**

    **Plaintiffs,**

    **v.**

**BANK OF AMERICA, N.A., et al.,**

    **Defendants.**

    Civil Action 2:19-cv-3223
    Judge Edmund A. Sargus
    Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Compel Discovery and for Award of Costs and Fees (Doc. 77), Defendants' Motion to Seal (Doc. 86), and Plaintiff's Motion to Seal (Doc. 90). Plaintiff's Motion to Compel (Doc. 77) is **GRANTED in part and DENIED in part**. The parties' Motions to Seal (Docs. 86, 90) are **DENIED**.

### I. BACKGROUND

The Court has previously summarized the background of this case. (*See* Doc. 74 at 1–3). Relevant here, Plaintiff challenges Defendants' policy of assessing overdraft fees, particularly for transactions of $1.00 or less, prior to November 2018. Plaintiff filed this putative class action, bringing a number of contract and quasi-contract claims against Defendants related to Defendants' overdraft policies and procedures. (*See generally* Doc. 1).

In discovery, Plaintiff served Defendants with a number of discovery requests, including two Requests for Production ("RFP") that are now the subject of this Motion:

> 10. All Documents concerning Bank of America's policies and/or practices affecting personal deposit account holders in Ohio with regard to the assessment of

>
> overdraft fees resulting from debits of $1.00 or less to; and
>
> 11. All Documents concerning Bank of America's policies and/or practices affecting personal deposit account holders in Ohio with regard to the assessment of overdraft fees resulting from transactions initiated by merchants for the purpose of verifying the existence and/or ownership of a Bank of America deposit account.

(Doc. 78-1 at 8). In response to Plaintiff's interrogatories, Defendants identified a series of events that, according to Plaintiff, are essential to understanding Defendants' policies and procedures regarding the assessment of overdraft fees resulting from transactions less than $1.00. And Defendants identified 33 individuals who were involved in the decision-making process with respect to those policies and procedures.

Defendants subsequently produced a limited number of documents regarding that decision-making process from Documentum, which it represents is a repository of electronically stored information ("ESI"). Documentum purportedly contains ESI from Defendants' committees that considered various policies and procedures related to the assessment of overdraft fees resulting from transactions less than $1.00. Plaintiff was frustrated by what she perceived as a limited production from Documentum, leading to a request for a conference with the Court.

Shortly before that conference, according to Plaintiff, Defendants offered to interview some of the individuals identified in their interrogatory responses and conduct custodial searches outside of Documentum for documents potentially responsive to RFPs 10 and 11. After a conference with the Court, the parties met and conferred and appeared to reach an agreement resolving this dispute. Not surprisingly, given the tenor of this litigation so far, the tentative agreement fell apart, leading to the instant motion practice.

Plaintiff maintains that non-privileged documents responsive to RFPs 10 and 11 are highly relevant and that Defendants have failed to conduct a diligent search outside of Documentum for documents responsive to these requests. (*See generally* Docs. 77, 88). Defendants assert that

2

Plaintiff is estopped from claiming the documents in question are relevant and that those documents are, in fact, irrelevant. (*See generally* Doc. 87). The Motion is fully briefed and ripe for resolution.

## II. MOTION TO COMPEL

### A. Standard of Review

Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Rule 37 permits a discovering party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has in good faith conferred or attempted to confer with the party failing to respond to the requests. Fed. R. Civ. P. 37(a). And it allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3).

"The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "Relevant evidence" is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is

3

within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

**B.  Discussion**

The Court first addresses Defendants' preliminary argument that Plaintiff is estopped from arguing that the requested information is relevant. It then turns to the merits of Plaintiff's relevancy arguments.

*1. Estoppel*

Defendants contend that Plaintiff's relevancy argument "is clearly inconsistent with the position it took in opposing the Bank's motion to dismiss on preemption grounds, and the Court adopted that position in declining to dismiss all of Plaintiff's claims." (Doc. 87 at 6). According to them, the prejudice "is clear" because "Plaintiff now demands discovery on grounds that the Court recognized would require dismissal of the case, and the case proceeds only because the Court accepted her earlier position that this case was not about the commercial reasonableness of the amount of the overdraft fee." (*Id.* at 7).

"The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020) (citations and internal quotations omitted). "The purpose of the doctrine is to protect the integrity of the judiciary by preventing a party from convincing two different courts of contradictory positions, which would mean that one of those two courts was deceived." *Id.* (citation omitted). "For this reason, courts will typically apply judicial estoppel only where 'the party has succeeded in persuading a court to

accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).

"Judicial estoppel must be applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Audio Technica U.S.*, 963 F.3d at 575 (citation and internal quotations omitted). "Therefore, the doctrine only applies when the positions at issue are clearly contradictory, and the estopped party's conduct involves more than mistake or inadvertence." *Id.* (internal citations and quotations omitted).

Having reviewed Plaintiff's briefing on its Motion to Dismiss and the District Judge's Opinion and Order, the Undersigned does not find that Plaintiff's positions are "clearly contradictory," *id.* Before the District Judge, Plaintiff argued that she was "not ask[ing] the court to tell the banks how to exercise their discretion, but simply that the such exercise of discretion [sic] must be carried out as contemplated by the covenant of good faith and fair dealing and related state law duties." (Doc. 19 at 17). And that still appears to be consistent with the position that Plaintiff relies on now. (*See generally* Doc. 77).

Defendants, however, emphasize that, "Plaintiff now explains the relevance of the disputed discovery entirely in terms questioning the Bank's discretion with an eye to the amount of the fee." (Doc. 87 at 7). The Court reads Plaintiff's argument differently. According to Plaintiff, information related to the RFPs in question goes to "BANA's lack of disclosure, the ambiguous and deceptive nature of the relevant contracts, the oppressive and commercially unreasonable terms in the relevant contracts, and the fact that the overdraft fees were not reasonably related to the costs associated with covering the overdraft." (Doc. 77 at 15). As a result, the Court sees little,

5

if any, contradiction between Plaintiff's prior and current positions. Applying judicial estoppel here is, therefore, inappropriate. *Audio Technica U.S.*, 963 F.3d at 575.

### 2. Relevancy

The District Judge's Opinion made clear that at least two claims survived Defendants' earlier Motion to Dismiss: a claim for declaratory judgment based on unconscionability and, in the alternative, an unjust enrichment claim. (Doc. 74 at 33–37; *id.*, 39–40). The Court now considers whether the information requested is relevant to those claims.

Assuming for the sake of argument that the requested discovery is irrelevant to Plaintiff's unconscionability claim,[1] the Court has little trouble finding that it is relevant to her unjust enrichment claim. "Under Ohio law, unjust enrichment occurs 'when a party retains money or benefits which in justice and equity belong to another.'" *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 858 (6th Cir. 2020) (quoting *Liberty Mut. Ins. Co. v. Indus. Comm'n of Ohio*, 532 N.E.2d 124, 125 (Ohio 1988)). "To succeed on an unjust enrichment claim under Ohio law, a plaintiff must prove three elements: '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.'" *Cook*, 961 F.3d at 858

---

[1] Case law suggests that a defendant's knowledge is, in fact, relevant to an unconscionability claim. *See Hayes v. Oakridge Home*, 908 N.E.2d 408, 413 (Ohio 2009) (quoting *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 22 (Ohio 2008)) ("Additional factors that may contribute to a finding of procedural unconscionability include the following: 'belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors.'"); *accord* 17 Ohio Jur. 3d Contracts § 84 (3rd ed. 2020) (footnotes omitted) ("A determination of whether a contract is unconscionable is an issue of law. A factual inquiry into the particular circumstances of the transaction in question thus is required. Such a determination is a fact-sensitive question that requires a case-by-case review of the circumstances surrounding the agreement; whether a meaningful choice is present in a particular case can only be determined by considering all the circumstances surrounding the transaction, with findings on procedural unconscionability considered in tandem with the analysis on substantive unconscionability.").

(quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)).

"[W]hether it was unjust to permit a defendant to retain a benefit conferred upon it by the plaintiff" depends on "'the sum of the circumstances, as well as the equities involved in the case.'" *Cleveland C. Catholic High Sch. v. Mills*, 125 N.E.3d 328, 341 (Ohio Ct. App. 2018) (quoting *United States Health Practices, Inc. v. Blake*, No. 00AP-1002, 2001 WL 277291, *3 (Ohio Ct. App. Mar. 22, 2001)); *see also Mills*, 125 N.E.3d at 341–42 (considering "the totality of the circumstances and equities involved in the case" when analyzing an unjust enrichment claim). Although "Ohio law contains no requirement that a party have acted improperly for an action based upon quasi-contract to succeed, *F.D.I.C. v. Jeff Miller Stables*, 573 F.3d 289, 295 (6th Cir. 2009) (citing *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 860 (6th Cir. 2002)), courts regularly consider parties' knowledge and intent when analyzing unjust enrichment claims, *see, e.g.*, *Mills*, 125 N.E.3d at 341–42 (analyzing parties' respective knowledge regarding school voucher program and reversing district court's decision granting plaintiff summary judgment on its unjust enrichment based on defendant's failure to pay tuition); *First Natl. Bank of Omaha v. iBeam Sols., L.L.C.*, 61 N.E.3d 740, 760–61 (Ohio Ct. App. 2016) (affirming unjust enrichment judgment based on defendant's fraudulent conduct).

"Defining a given situation as either just or unjust is subjective." *Reisenfeld & Co.*, 277 F.3d at 860. And the subjective nature of that determination requires courts to consider "the totality of the circumstances and equities involved in the case." *Mills*, 125 N.E.3d at 341–42. Information regarding Defendants' decision-making with respect to its overdraft policies and procedures is, therefore, relevant to that analysis here. It may demonstrate that Defendants believed their overdraft policy to be consistent with industry standards and commercially reasonable. Or it could show that Defendants' overdraft policy was motivated by profit and

knowledge that the average consumer was unable to understand that policy. Either of those pieces of information would be relevant to Plaintiff's unjust enrichment claim and the Court's analysis of the same.

Defendants offer several arguments in response. According to them, unjust enrichment is an objective test. (Doc. 87 at 9 (citing with *Wayne Mut. Ins. Co. v. McNabb*, 45 N.E.3d 1081, 1083–84 (Ohio Ct. App. 2016))). The Court in *McNabb* recognized that "[n]either negligence nor unjust enrichment requires intent." 45 N.E.3d at 1084. But, as explained above, just because unjust enrichment does not require intent does not mean that intent is irrelevant.

Next, Defendants argue that policies under which Plaintiff was not charged an overdraft fee are irrelevant. (Doc. 87 at 9–10). The Court disagrees. So long as the documents in question relate to policies and procedures that permitted Defendants to assess an overdraft fee for transactions less than $1.00, they may, and likely do, contain relevant information regarding Defendants' knowledge and intent regarding the overdraft fee assessed to Plaintiff. The same is true with respect to documents regarding Defendants' policy not to assess overdraft fees on transactions of $1.00 or less.

Defendants further contend that documents not considered by their decision-making committee are irrelevant. According to them, they have produced "documents known to the Bank's decisionmaking bodies," and "what individual employees knew or could have known based on the documents available to them" are irrelevant. (Doc. 87 at 11; *see also id.* ("Undoubtedly, overdraft fees were discussed between and among Bank of America employees. But no communication that these individuals had among themselves, or with others at the Bank, concerning overdraft fees generally is relevant to any contested issue or to the subject matter of Plaintiff's claims. Unlike a securities fraud or adverse employment action case, where who knew

what and when matters, this case is about the actions of the Bank in its corporate capacity, not the decisions of individual employees, so the documents of individual Bank employees have no relevance here.")).  This would be a strong argument if case law supported it.  But Defendants cite none, and the Court has not found any authority for this contention.  Common sense suggests that individual employees will have knowledge of Defendants' policies and procedures regarding the relevant overdraft fee and Defendants' motivation for formulating the same.  That information is relevant to Plaintiff's unjust enrichment claim.

Finally, Defendants assert that they are not required to produce the documents in question because the parties' stipulated ESI Protocol does not require them to do so.  (Doc. 87 at 10–11 (citing Doc. 47, ¶ 3(c))).  The Protocol provides:

> Except upon a showing of good cause, where a discovery request seeks information that is contained in a system of record, the producing party may search only that system of record.  A system of record for purposes of this Order is the source of data for a given piece of information that is authoritative with respect to the producing party's business processes.

(Doc. 47, ¶ 3(c)).  According to Defendants, they have produced all relevant documents from their system of record, Documentum, and, therefore, they do not need to conduct any additional searches.  (*See* Doc. 87 at 10–11).

There are two problems with this argument.  First, Defendants have not provided a substantive explanation of Documentum or any evidence from which the Court could conclude that it is, in fact, the system of record for the relevant information.  Moreover, Defendants appear to suggest that Documentum is the system of record for documents actually submitted to the relevant committee.  (Doc. 87 at 3).  But the Court has found that Plaintiff is entitled to more than just the documents submitted to the relevant committee.

Second, even assuming that Documentum was the system of record for the information that

the Court finds relevant, a party can be compelled to search sources other than the system of record upon a showing of good cause. (Doc. 47, ¶ 3(c)). Given Defendants' limited production from Documentum regarding RFPs 10 and 11, the Court finds that good cause exists to authorize a reasonable search outside of Documentum for relevant information.

In sum, the Court finds that documents responsive to Plaintiff's RFP 10 and 11 are, at a minimum, relevant to her unjust enrichment claim. Defendants are, therefore, obligated to conduct a reasonable search for that information. The parties are **ORDERED** to meet and confer on the scope of that reasonable search. The Court expects both parties be reasonable in their respective demands regarding this search.

*3. Costs and Fees*

Plaintiff seeks an order compelling Defendants to conduct a reasonable search for documents responsive to RFPs 10 and 11 and to pay reasonable attorneys' fees "incurred as a result of BANA's violations of the Federal Rules and the Discovery Order, including but limited to fees incurred in bringing this motion." (Doc. 77 at 5).

Although "[t]his Motion concerns BANA's failure to conduct a diligent search for documents responsive to" RFPs 10 and 11, (Doc. 77 at 3), Plaintiff devotes most of her briefs to cataloguing Defendants' alleged violations of the Federal Rules and the Court's Discovery Order, (*see generally* Docs. 77, 88). While that provides relevant factual context for her Motion to Compel, it does not justify an award of attorneys' fees and costs for those alleged violations unrelated to Defendants' refusal to produce documents responsive to RFPs 10 and 11. To the extent Plaintiff wishes to request attorneys' fees for violations related to Defendants' alleged breach of the Discovery Order and alleged failure to comply with the Federal Rule's disclosure requirements, Plaintiff is required to file a separate motion.

Further, Plaintiff's request for fees and costs related to the instant Motion are **DENIED** because, as Defendants note, (Doc. 87 at 13), she provides little, if any, justification for that request. Even if the Court were inclined to make that argument for Plaintiff, on the mixed record before the Court, it cannot conclude that Defendants' opposition was not substantially justified. Indeed, the only thing that is clear from that mixed record is the parties' inability to work together in a civil manner.

### 4. *The parties' obligation to work together in good faith*

Now would be a good time for the parties to consider their conduct in litigating this case so far. The "Local Rules are designed to make litigation in this District Court efficient, manageable, and predictable." S.D. Ohio Civ. R., *Introductory Statement on Civility*.

> Rather than devising additional Local Rules that attempt to mandate civility and professionalism, the Judges of this District have concluded that this Statement on Civility is the most appropriate way to emphasize for our bar and for litigants who come before this Court the ideals that ought to guide behavior for all those appearing in the Southern District of Ohio. Every lawyer, litigant, and Judge is entitled to expect, and should be accorded, the courtesy and respect described in this Statement.
>
> 1. Common courtesy. In everyday life most people accord each other common courtesies. Ordinarily these include: politeness in conversation, respect for others' time and schedules, and an attitude of cooperation and truthfulness. Involvement in the legal system does not diminish the desirability of such conduct. An opposing litigant, a lawyer who represents that litigant, or a Judge who decides an issue has not thereby forfeited the right to be treated with common courtesy.
>
> 2. Respect for the profession. One of a lawyer's foremost obligations is to serve his or her client's interests zealously within the bounds of the law. Yet, this is not a blanket excuse for disrespectful or obstructionist behavior. Such conduct reinforces the public's negative perception of the legal profession. Lawyers who practice the art of making life difficult— who shade the truth, are deliberately uncooperative in the discovery or trial preparation process, take extreme or marginally defensible legal positions, or deliberately make litigation more expensive or time consuming—bring disrepute on the legal profession and harm the reputation of this Court's bar in the community. Lawyers engaging in such conduct and litigants who encourage or tolerate it undermine immeasurably their own standing with the Court.

11

> 3. Respect for the legal system. Those who have chosen to practice law as a profession have sworn to uphold a legal system that offers all people a fair and just way to resolve disputes. Inappropriate behavior—treating litigation as a "game" in which the party with the most overtly aggressive lawyer might prevail regardless of the merits of the case, or casting aspersions on the fairness or integrity of decisions by Judges or juries when there is no legitimate basis to do so—brings disrespect upon the legal system as a whole. We acknowledge that Judges and court staff who are noticeably impatient, impolite, or disrespectful to lawyers and litigants can cause the same undesirable effect. Lawyers and the Judges and court personnel of this District Court should all conduct themselves in ways that do not impugn the integrity and dignity of this Court.

*Id.*

Based on the course of this litigation to date, the parties and their counsel have violated the spirit, if not the letter, of that Statement. The Court has done its best to assist the parties in resolving their disputes and to encourage them to work together in good faith, but its efforts to do so have proved ineffective. So now it is time to change the spirit in which this matter is being litigated.

For any future discovery disputes, the Court will consider imposing Rule 37(b) sanctions against the losing party, in addition to any other award of fees and costs that are available under the Federal Rules. Both sides believe that the other's conduct is responsible for the discovery disputes in this matter. And the Court has little doubt that counsel for both sides believe that it is the other side who will likely be sanctioned in any future discovery dispute. Because litigation is adversarial and the record is rarely one-sided, the more likely outcome is that both parties and/or their counsel will be sanctioned. The parties and counsel would do well to consider this as they continue with discovery.

Further, at all future telephonic conferences regarding a discovery dispute, local counsel will be required to participate and certify to the Court that the party they represent has met and conferred in good faith and attempted to resolve the relevant dispute consistent with the Local Rule's Statement on Civility. Finally, if these measures are unsuccessful in changing the parties'

conduct in this matter, the Court will order that client representatives be required to participate in any such telephonic conference as well.

The Court looks forward to working with the parties and counsel in a civil manner moving forward.

### III. MOTIONS TO SEAL

This matter is also before the Court on Defendants' Motion to Seal (Doc. 86) and Plaintiff's Motion to Seal (Doc. 90). Defendants seek to seal the unredacted version of Plaintiff's Motion to Compel Discovery and for Award of Costs and Fees and a number of exhibits attached thereto. Plaintiff seeks to seal Exhibits A and B to the Second Declaration of Henry J. Kelston.

In support of her Motion to Compel (Doc. 77), Plaintiff included information from documents produced by Defendants in discovery that are marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" under the parties' Protective Order. Both parties assert that this information and the documents containing it are trade secrets.

Courts distinguish between limiting public disclosure of information during discovery versus the adjudicative stage of a case. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016). "The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record." *Id.* (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)). "Unlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). For this reason, the moving party has a "heavy" burden of overcoming a "'strong presumption in favor of openness' as to court records." *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson*, 710 F.2d at 1179); *see also Shane Grp.*, 825 F.3d at

305 ("Only the most compelling reasons can justify non-disclosure of judicial records." (quotation omitted)).

"[I]n civil litigation, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is typically enough to overcome the presumption of access." *Shane Grp.*, 825 F.3d at 308 (citation and quotations omitted). "[T]he seal itself must be narrowly tailored to serve" the reason for sealing, which requires the moving party to "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 305–06 (quotation omitted). Ultimately, the movant must show that "disclosure will work a clearly defined and serious injury … And in delineating the injury to be prevented, specificity is essential." *Id.* at 307–08 (internal citations and quotations omitted). Similarly, the court "that chooses to seal court records must set forth specific findings and conclusions which justify nondisclosure." *Id.* at 306 (quotation omitted).

Both parties offer conclusory representations that the relevant information and related documents are trade secrets. If that is true, and if the public interest does not outweigh the compelling interest in viewing them, sealing is appropriate. The parties, however, have not demonstrated as much here.

First, in moving to seal the relevant information and documents, the parties have not "analyze[d] in detail, document by document, the propriety of secrecy, providing reasons and legal citations," *Shane Grp.*, 825 F.3d at 305–06 (quotation omitted). This alone is sufficient grounds for denying the Motion to Seal.

14

Second, state law defines whether something is a trade secret, and neither party makes any effort to consider it here.  In Ohio, courts consider six factors in determining whether information constitutes a trade secret:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Handel's Enter., Inc. v. Schulenburg*, 765 F. App'x 117, 122 (6th Cir. 2019) (citing *Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 F. App'x 860, 861–62 (6th Cir. 2008)). Because the parties do not address these factors or submit any evidence relevant to them, they have failed to demonstrate that the information in question is, in fact, a trade secret.  The Court cannot find that there is a compelling interest in redacting that information as a result.

Finally, the Court is obligated to consider whether the public interest weighs against sealing or redacting the information in question.  *See Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019) (citing *Shane Grp.*, 825 F.3d at 305) (holding that, even "[w]here a party can show a compelling reason for sealing, the party must [still] show why those reasons outweigh the public interest in access to those records and that the seal is narrowly tailored to serve that reason"). "[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access.  *Shane Grp., Inc.*, 825 F.3d at 305 (citation omitted).  Indeed, in class actions, like this case, "the standards for denying public access to the record should be applied ... with particular strictness."  *Id*. (citation, internal quotations, and alterations omitted).  That strict standard weighs against sealing the information in question here.

15

At base, the parties have not overcome the "'strong presumption in favor of openness' as to court records." *Id.* (quoting *Brown & Williamson*, 710 F.2d at 1179).  Their Motions to Seal will be denied as a result.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion (Doc. 77) is **GRANTED in part and DENIED in part**.  The parties' Motions to Seal (Doc. 86, 90) are **DENIED**.

IT IS SO ORDERED.


Date:  November 4, 2020                                       /s/ Kimberly A. Jolson
                                                              KIMBERLY A. JOLSON
                                                              UNITED STATES MAGISTRATE JUDGE